================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
----------------------------------------------------------------
No. 167
The People &c.,
            Respondent,
        v.
Joseph Conceicao,
            Appellant.
-----------------------
No. 168
The People &c.,
            Respondent,
        v.
Federico Perez,
            Appellant.
-----------------------
No. 169
The People &c.,
            Appellant,
        v.
Javier Sanchez,
            Respondent.

Case No. 167:
        Paul Wiener, for appellant.
        Eric C. Washer, for respondent.

Case No. 168:
        Harold V. Ferguson, Jr., for appellant.
        Eric C. Washer, for respondent.

Case No. 169:
        Jordan K. Hummel, for appellant.
        Kristina Schwarz, for respondent.

PIGOTT, J.:

The primary issue in these appeals is whether defendants entered knowing, intelligent and voluntary guilty pleas when the trial courts failed to mention the constitutional rights defendants were waiving -- the right to a trial by jury, the right to confront one's accusers and the privilege against self-incrimination (see Boykin v Alabama, 395 US 238, 243

- 1 -

[1969]).  We hold that the failure to recite the <u>Boykin</u> rights does not automatically invalidate an otherwise voluntary and intelligent plea.  Where the record as a whole affirmatively shows that the defendant intentionally relinquished those rights, the plea will be upheld.  The records in <u>People v Perez</u> and <u>People v Sanchez</u> contain such a showing, and therefore defendants' pleas were valid.  Defendant's plea in <u>People v Conceicao</u> must be vacated because the record fails to establish a knowing and intelligent waiver.

## I.

### <u>People v Conceicao</u>

On December 30, 2009, defendant Joseph Conceicao was arrested and charged with criminal possession of a controlled substance in the seventh degree, a class A misdemeanor (Penal Law § 220.03).  The next day at arraignment, the People recommended a plea to the charge in exchange for two days of community service.  Defendant stated that he wished to plead guilty, and the court imposed the agreed-upon sentence.

Defendant appealed, arguing that his plea was not knowing and voluntary because he was never informed of his <u>Boykin</u> rights.  The Appellate Term affirmed the judgment of conviction, holding that defendant's challenge to the adequacy of the plea allocution unpreserved for appellate review and declining to

review it in the interest of justice.  Alternatively, the court found defendant's plea voluntary, knowing and intelligent (People v Conceicao, 33 Misc 3d 132[A] [App Term, 1st Dept 2011]).  A Judge of this Court granted defendant leave to appeal (23 NY3d 961 [2014]).

### People v Perez

Defendant Federico Perez was initially charged with failure to disclose the origin of a recording (Penal Law § 275.25), criminal possession of marijuana in the fifth degree (Penal Law § 221.10 [1]) and unlawful possession of marijuana (Penal Law § 221.05).  Two months after his arrest, defendant rejected an offer to plead guilty to disorderly conduct in exchange for a $250 fine, and his attorney moved to suppress evidence and dismiss the accusatory instrument.  After five months of litigation, the People offered a plea of disorderly conduct in exchange for a $100 fine, and the court adjourned the case for an additional month so that defendant could consider the offer.  Defendant accepted the offer, stated that he wished to plead guilty to a violation in satisfaction of the charges against him, and confirmed that he "had enough time to speak to [his attorney] about th[e] plea."

Defendant then appealed, arguing his plea was invalid because the court failed to mention any of the Boykin rights.

The Appellate Division affirmed the judgment of conviction, finding that "the particular circumstances of the case . . . establishe[d] defendant's understanding and waiver" (People v Perez, 116 AD3d 511, 511 [1st Dept 2014]).  A Judge of this Court granted defendant leave to appeal (24 NY3d 1004 [2014]).

## People v Sanchez

Defendant Javier Sanchez was arrested for operating a motor vehicle while under the influence of alcohol, an unclassified misdemeanor (Vehicle and Traffic Law §§ 1192 [1],[2],[3]; 1193 [1] [b]).  Five months later, on the day of defendant's scheduled trial, defense counsel alerted the court that defendant wanted to plead guilty to the charge in exchange for a $500 fine, completion of a "drunk driver's program," installation and maintenance of an ignition lock and six-month revocation of his license.  The prosecutor confirmed the conditions of the plea, and the defendant stated that he agreed to plead guilty.  When asked by the Court and with defendant at his side, defense counsel waived further allocution, prosecution by information and adjournment for sentence, and the court imposed the agreed-upon sentence.

Defendant appealed, arguing the plea was not voluntary, knowing and intelligent because the trial court did not mention any of the Boykin rights.  The Appellate Division reversed the

judgment of conviction, vacated the plea and remanded for further proceedings on the ground that the "record fail[ed] to demonstrate that defendant was informed of any of the constitutional rights he was waiving . . . or that he consulted with counsel about the constitutional consequences of his guilty plea" (People v Sanchez, 126 AD3d 482, 482 [1st Dept 2015]).  A Judge of this Court granted the People leave to appeal (25 NY3d 1077 [2015]).

                              II.

        As a threshold matter, we conclude that defendants' claims are reviewable on direct appeal despite the fact that none of the defendants moved to withdraw his plea or vacate the judgment of conviction.

        "Generally, in order to preserve a claim that a guilty plea is invalid, a defendant must move to withdraw the plea . . . or else file a motion to vacate the judgment of conviction pursuant to CPL 440.10" (People v Peque, 22 NY3d 168, 182 [2013] [citations omitted]).  We have recognized a narrow exception to the preservation requirement, however, where the particular circumstances of a case reveal that a defendant had no actual or practical ability to object to an alleged error in the taking of a plea that was clear from the face of the record (People v Louree, 8 NY3d 541, 546 [2007]).  If a defendant has an

opportunity to seek relief from the sentencing court, he must

preserve his challenge to the plea (see People v Crowder, 24 NY3d

1134, 1136 [2015] [requiring defendant to preserve his challenge

to the plea allocution where he "had three opportunities to

object"]; People v Murray, 15 NY3d 725, 727 [2010] [requiring

defendant to preserve his challenge to the plea allocution where

he "could have sought relief from the sentencing court in advance

of the sentence's imposition"]).

        In People v Tyrell (22 NY3d 359 [2013]) we reviewed a

defendant's Boykin claims on direct appeal, notwithstanding the

absence of a postallocution motion, where the defendant had no

opportunity to withdraw the plea before imposition of the

sentence (id. at 364, quoting Louree, 8 NY3d at 546 and People v

Lopez, 71 NY2d 662, 665 [1988]).  Although we suggested in dicta

that a court's failure to mention the Boykin rights may also be

viewed as a mode of proceedings error, categorically exempt from

the preservation rule, we make clear today that the preservation

requirement still applies to Boykin claims depending upon the

particular circumstances of a case.  Thus, a challenge to the

validity of a plea, whether based on the court's failure to

mention the Boykin rights or some other alleged defect in the

allocution must be preserved depending on the facts of a case.

Because defendants in these appeals faced a practical inability

to move to withdraw their plea, we may review their unpreserved claims.

We further reject the People's contention that <u>Tyrell</u> announced a "new" rule of preservation. <u>Tyrell</u> "merely applie[d] previously established principles in a new factual setting" (<u>People v Favor</u>, 82 NY2d 254, 263 [1993]), concluding that "[u]nder the particular circumstances of th[at] case[] . . . defendant's <u>Boykin</u> claims [we]re reviewable on direct appeal" (<u>Tyrell</u>, 22 NY3d at 363). Because <u>Tyrell</u> did not announce a new rule, we have no occasion to consider the circumstances in which new rules apply retroactively (<u>see</u> <u>People v Pepper</u>, 53 NY2d 213 [1981]) and turn to the merits of defendants' claims.

### III.

Trial courts have "a vital responsibility" to ensure that a defendant who pleads guilty makes a knowing, voluntary and intelligent choice among alternative courses of action (<u>People v Harris</u>, 61 NY2d 9, 19 [1983]). They need not engage in any particular litany, however, as "we have repeatedly rejected a formalistic approach to guilty pleas and have steered clear of a uniform mandatory catechism of pleading defendants" (<u>Tyrell</u>, 22 NY3d at 365 [internal quotations omitted]). Instead, we have opted for a flexible rule that considers "all of the relevant circumstances surrounding" a plea (<u>Harris</u>, 61 NY2d at 19, quoting

Brady v United States, 397 US 742, 749 [1970]).  Among other factors, we evaluate "[t]he seriousness of the crime, the competency, experience and actual participation by counsel, the rationality of the 'plea bargain' . . . the pace of the proceedings in the particular criminal court" and whether the defendant consulted with his attorney about the constitutional consequences of the plea (id. at 16).  So long as the record as a whole "affirmatively disclose[s] that a defendant who pleaded guilty entered his plea understandingly and voluntarily," the plea will be upheld (id. at 19 [quotations omitted]).

Our recent decision in Tyrell "signal[ed] no retreat from the principle that trial courts retain broad discretion in the taking of pleas and need not follow any kind of rigid catechism.  We merely appl[ied] the well-settled proposition that the record as a whole must contain an affirmative demonstration of the defendant's waiver of his fundamental constitutional rights" and concluded that the particular facts in that case did not establish such a waiver (Tyrell, 22 NY3d at 366).  Although we emphasized the plea court's failure to discuss any of the Boykin rights on the record, we did not announce a rule that a discussion of those rights is invariably required where the record shows, or "an allegation and evidence" show, that an accused intelligently and understandingly rejected his

constitutional rights (id.).  To the contrary, we based our decision, at least in part, on the absence in the record of any indication that "defendant spoke with his attorney" about the consequences of the plea, for which the court imposed a sentence of incarceration (id.).

Having searched the records in each of these appeals, we hold that defendants, with the exception of Conceicao, intelligently and understandingly waived their constitutional rights.

In Perez, defendant pleaded guilty to a non-criminal offense that carried no consequences other than the $100 fine he paid.  Defendant's attorney actively litigated the case for seven months, demonstrating "the competency, experience and actual participation by counsel" -- factors we weigh in determining whether there was a valid waiver (Harris, 61 NY2d at 16).  Furthermore, the court adjourned the matter for an additional month just so defendant could consider the plea that he ultimately accepted, and defendant stated on the record that he had enough time to discuss the plea with his attorney.  In our view, the Appellate Division correctly concluded that the record as a whole "establish[ed] defendant's understanding and waiver of his constitutional rights" (Perez, 116 AD3d at 511).

The record in Sanchez similarly reflects a knowing and

voluntary plea.  Represented by the same attorney that represented the defendant in Perez, defendant filed numerous pre-trial motions and actively litigated the case for six months.  Moreover, defendant was aware of his right to a trial, because his case was on for trial the very same day that defendant pleaded guilty.  That his attorney announced at the start of the plea proceeding, without the need for any additional discussion with defendant or the prosecutor, that defendant had decided to plead guilty rather than proceed to the scheduled trial further confirms that defendant made the decision to plead guilty after consulting with counsel prior to the start of the proceeding.  And as in Perez, defendant, through his attorney, waived a more detailed allocution that might have entailed discussion of the Boykin rights.

We recognize that a DWI is a serious offense that "affects a defendant's driving privileges" and "can be the basis for elevating a subsequent similar charge to a felony" (Sanchez, 126 AD3d at 483).  We are also aware that defendant did not affirmatively state on the record, as did the defendant in Perez, that he had enough time to speak with his attorney about the plea.  Though the plea allocution in Sanchez could have been more robust, the record as a whole reveals a knowing and intelligent choice among alternative courses of action.

By contrast, the record in <u>Conceicao</u>, like the record in <u>Tyrell</u>, contains no discussion of any of the circumstances surrounding the plea or the rights defendant waived; nor does it indicate whether defendant spoke with his attorney before entering the plea. Defendant's only interaction with the court was stating that he wished to plead guilty. Because the totality of the circumstances in <u>Conceicao</u> reveal that defendant did not have an opportunity to discuss the plea with his attorney or consider its consequences, his plea was invalid.

Accordingly, the order of the Appellate Term in <u>People v Conceicao</u> should be reversed, and the case remitted to Criminal Court of the City of New York for further proceedings.[1] The order of the Appellate Division in <u>People v Perez</u> should be affirmed. The order of the Appellate Division in <u>People v Sanchez</u> should be reversed, and the judgment of Supreme Court reinstated.

---

[1] Unlike the parties in <u>Tyrell</u>, the People do not agree that dismissal is the appropriate corrective action in this case (see <u>Tyrell</u>, 22 NY3d at 366). Under the circumstances, we find a "penological purpose[]" in sending the case back to Supreme Court (see <u>People v Allen</u>, 39 NY2d 916, 918 [1976]; <u>People v Mones</u>, 130 AD3d 1244, 1247 [3d Dept 2015] [remitting matter to County Court after vacating plea on the ground that defendant did not knowingly and voluntarily waive constitutional rights]; <u>People v Bacetty-Ortiz</u>, 2015 NY Slip Op 51420[U], *2 [App Term, 2d Dept 2015] [same]).

People v Joseph Conceicao; People v Federico Perez;
People v Javier Sanchez

No. 167, 168, 169


LIPPMAN, Chief Judge(concurring in People v Conceicao and
dissenting in People v Federico Perez and People v Javier
Sanchez):

In People v Tyrell (22 NY3d 359 [2013]) we addressed a
problematic practice, which although perhaps not as pervasive as
the People claim in their Conceicao retroactivity argument, had
become troublingly recurrent, particularly in criminal courts
handling non-felony matters: guilty pleas were being elicited in
a most perfunctory way, often leaving no affirmative record of
the foundational waiver of constitutionally guaranteed trial
rights -- commonly referred to as the Boykin rights -- essential
to the validity of any plea-based conviction (see Boykin v
Alabama, 395 US 238, 243 [1969]).  Tyrell reaffirmed that the
necessary waiver could not and would not be presumed from a
"silent record" (22 NY3d at 365-366).  The present appeals
collectively ask whether a record that is not utterly silent as
to the plausibility of a waiver, but contains no actual
expression of a defendant's waiver of trial rights, is
sufficiently "audible" to support a criminal conviction.  The
majority says that it may be, and, indeed, that in two of the
three appeals before us the records are.  I believe that this is

- 1 -

incorrect as a matter of law, perpetuates what has been in practice a standardless jurisprudence productive of inexplicably disparate outcomes in materially indistinguishable case, and is demonstrably flawed as a matter of policy.  It was precisely this approach to judging the adequacy of foundational trial-right waivers that allowed the emergence and spread of the plea practice we finally found it necessary to disapprove in Tyrell.

Boykin, of course, identified "three important federal rights" encompassed by the waiver necesssarily incident to a conviction founded upon a plea -- the privilege against compulsory self-incrimination, the right to a jury trial, and the right of confrontation (395 US at 243).  The waiver of these rights, said Boykin, could not be presumed from a "silent record."  Boykin, however, did not stop there; it did not hold that a waiver could otherwise be presumed.  Rather, quoting from Carnley v Cochran (369 US 506 [1962]), a case concerning the adequacy of a waiver of the right to counsel, Boykin made clear that the record of a plea was minimally required to document an actual, not a supposed, waiver; it was required to show "that the accused was offered [the fundamental trial rights just before identified in the opinion] but intelligently and understandingly rejected the offer" (Boykin, 395 US at 242 [internal quotation marks and citation omitted]).  "Anything less," said the court, "is not waiver" (id.).  Nor did the court leave a question as to where the responsibility for creating the record of the waiver

lay: the obligation was judicial and when met by "the judge" left "a record adequate for any review that may be later sought" (id. at 244).

This State's jurisprudence governing plea adequacy is rooted in cases preceding Boykin -- cases whose principal focus was not, as was Boykin's, the foundational waiver, but rather the sufficiency of the defendant's factual admission of guilt. In People v Nixon (21 NY2d 338 [1967]), our leading pre-Boykin decision bearing on plea adequacy, the court pointedly declined to require any uniform canvas in eliciting pleas, holding instead that pleas were to be judged individually, giving consideration to various factors, including the knowledge, experience and native intelligence of the defendant, "the seriousness of the crime, the competency and experience of counsel, the actual intensive participation by counsel, the nature of the crime as clearly understood by laymen, the rationality of the 'plea bargain,' and the speed or slowness of procedure in the particular criminal court" (21 NY2d at 354). Our post-Boykin decisions, most notably People v Harris (61 NY2d 9 [1983]), have carried forward Nixon's rejection of plea "catechisms" and concomitantly have read Boykin not to require a "ritualistic" recitation of the trial rights waived incident to a guilty plea (id. at 19).

Reasonable minds might well differ as to this minimizing gloss of Boykin; Boykin does, after all, speak of "three

important federal rights" that must be waived as a condition of a valid plea and, in turn, requires as a condition of a valid waiver a record showing that the accused was <u>offered</u> and "intelligently and understandingly" <u>rejected</u> those rights.  If, as <u>Boykin</u> emphasizes, "anything less is not waiver," it is exceedingly difficult to understand how a record that simply does not document an offer and a rejection of the core trial rights -- and none of the records before us on these appeals does -- can support a valid plea-based conviction.  It may be that a defendant is intelligent and experienced, that he or she is represented by competent counsel, and that the proposed plea seems rational.  But those are circumstances most often merely supposed at the time of a plea, and would not, even if more firmly grounded, singly or in combination overcome the strong presumption against the waiver of fundamental rights (see <u>Johnson v Zerbst</u>, 304 US 458, 464 [1938]) to establish that a plea rests, as it must to be a conviction, upon a knowing and intelligent relinquishment of trial rights.  <u>Boykin</u> would seem to say quite clearly that only an actual record waiver, or direct evidence of one, is equal to that formidable task.

While it may seem a sign of judicial sophistication to eschew "litanies," "catechisms," "rituals," "scripts" and "formulas" and to aspire instead to an exercise of discretion based on the "totality," it is a stubborn, analytically unassailable truth that without a sound waiver of trial rights

there can be no valid conviction premised on a plea. Establishing such a waiver may not necessitate a particular choice of words, but it is unavoidable that a certain canvas must in the end be conducted. Federal law requires such a canvas (Federal Rules of Criminal Procedure 11 [b] [1]), and it is time to wean ourselves of the frankly provincial notion rooted in our pre-Boykin jurisprudence that one should not be employed in our state courts as well, at least for the purpose of establishing a knowing and intelligent waiver of the basic trial rights.

Clinging to the notion that record trial-right waivers, or their evidentiary equivalent, are unnecessary where it appears to a reviewing court that there are circumstances seeming to suggest that such a waiver would have been made, is, as this recent crop of appeals demonstrates, a recipe for the toleration of slipshod practice and deficient pleas, particularly in busy courts handling non-felony cases where the temptation to shortcuts is understandably heightened. It is all too easy to suppose that a represented defendant will, as a matter of course, accept a plea offer to a relatively minor offense carrying a commensurately minor penalty, and, on the basis of that supposition, to fall into the habit of accepting pleas on a record that is silent as to the most direct consequence of the plea -- the loss of the defendant's trial rights. The implicit assumption, that those rights are valueless except as barter for the offered plea and thus not worthy of mention, is incompatible with the presumption

of innocence and trivializes a pleading decision that may have most serious personal and economic consequences.  It is an assumption ill-befitting our courts, heedless of basic principles governing the waiver of constitutional rights and, to the extent that it needlessly gives rise to marginal pleas inviting further litigation, profligately wasteful of judicial resources.  It is time to end rather than encourage such pleas.  <u>Tyrell</u>, I believe, attempted to accomplish the former purpose, albeit without signaling a discontinuity in our jurisprudence.  The salutory consequence of that careful effort will be minimized by the majority's willingness to infer waivers never actually elicited by, or otherwise sufficiently proved before the plea court.  This does not seem to me to be sound law or sound policy.

The People of the State of New York v Joseph Conceicao
The People of the State of New York v Federico Perez
The People of the State of New York v Javier Sanchez

No. 167, 168, 169

RIVERA, J.(concurring in part, dissenting in part in People v
Conceicao, and dissenting in People v Federico Perez and People v
Javier Sanchez):

I join the Chief Judge's dissent in People v Perez and

People v Sanchez, and share his concern regarding the majority's

approach to resolving Boykin claims.  I write separately to

express my disagreement with the majority's decision to limit the

grounds for preservation of Boykin claims, and to dissent, in

part, in People v Conceicao from the majority's failure to follow

our established precedent of dismissing accusatory instruments

where no penological purpose exists to remit.

In People v Tyrell, we reviewed defendant's direct

appeal because preservation was not required based on either of

two grounds: the so-called Lopez/Louree exception or a mode of

proceedings error (Tyrell, 22 NY3d 359, 364 [2013]).  We

explicitly did not resolve which category applied because the

defendant's Boykin claims were "clearly reviewable on direct

appeal" (id.).  The majority has now determined that Boykin

claims must be preserved, like other alleged defects in an

allocution, but that a court may, nevertheless, review

unpreserved claims when a defendant does not have a practical

- 1 -

opportunity to withdraw a plea before sentencing (majority op, at
__).  In so doing, the majority disregards the fact that the
nature of Boykin claims as a general matter, and these claims in
particular, necessarily "implicat[es] rights of a constitutional
dimension directed to the heart of the proceedings" (id.).
Therefore, unlike the majority, I would find defendants' claims
in all three appeals preserved because a Boykin violation
constitutes a mode of proceedings error.

In People v Conceicao, the majority also departs from
our precedent directing dismissal of the accusatory instrument
where a plea is vacated after the defendant completes the
sentence and no penological purpose is served by remitting the
matter (see e.g. Tyrell, 22 NY3d at 366 [plea for marihuana sales
vacated after sentence completed]; People v Hightower, 18 NY3d
249, 253 [2011] [accusatory instrument dismissed; defendant had
served sentence]; People v Dreyden, 15 NY3d 100, 104 [2010]
[complaint charging criminal possession of a weapon
jurisdictionally defective; accusatory instrument dismissed
because defendant was sentenced to time served]; compare People v
Allen, 39 NY2d 916 [1976]; see also People v Mones, 130 AD3d
1244, 1244 [3d Dept 2015] [2012 plea, with sentence of aggregate
prison term of 8 ½ years and five years' postrelease supervision,
vacated and remitted], and People v Bacetty-Ortiz, 49 Misc 3d 130
[A] [App Term 2d Dept, 2d, 11th & 13th Jud Dist 2015] [plea of
defendant, initially charged with grand larceny in the third

degree, a class D felony, vacated and remitted, because a "penological purpose would be served by remitting the matter" as the charged offenses were "serious"]).  Like the defendant in Tyrell, Conceicao has served his sentence, and no discernable difference between the two cases is obvious from the record.  Therefore, I see no rational justification for dismissal of the accusatory instrument in one and not the other, and, in accordance with our precedent, I would dismiss the accusatory instrument in People v Conceicao.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

For Case No. 167:  Order reversed, defendant's guilty plea vacated and case remitted to Criminal Court of the City of New York, Bronx County, for further proceedings on the accusatory instrument.  Opinion by Judge Pigott.  Judges Abdus-Salaam, Stein and Fahey concur.  Chief Judge Lippman concurs in result in a separate concurring opinion.  Judge Rivera dissents in part in an opinion.

For Case No. 168:  Order affirmed.  Opinion by Judge Pigott. Judges Abdus-Salaam, Stein and Fahey concur.  Chief Judge Lippman dissents in an opinion in which Judge Rivera concurs, Judge Rivera in a separate dissenting opinion.

For Case No. 169:  Order reversed and judgment of Supreme Court, Bronx County, reinstated.  Opinion by Judge Pigott.  Judges Abdus-Salaam, Stein and Fahey concur.  Chief Judge Lippman dissents in an opinion in which Judge Rivera concurs, Judge Rivera in a separate dissenting opinion.

Decided November 24, 2015