=================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------
No. 36
The People &c.,
          Appellant,
       v.
Christian Williams,
          Respondent.

          Beth Fisch Cohen, for appellant.
          Anita Aboagye-Agyeman, for respondent.

ABDUS-SALAAM, J.:

When a defendant pleads guilty to a crime, he or she

generally must move to withdraw the plea or otherwise object to

its entry prior to the imposition of sentence to preserve a

challenge to the validity of the plea for appellate review (see

People v Toxey, 86 NY2d 725, 726 [1995]; People v Claudio, 64

- 1 -

NY2d 858, 858-859 [1985]).  In a line of cases beginning with
People v Lopez (71 NY2d 662 [1988]), however, we clarified the
existence of a narrow exception to the preservation requirement
in rare cases where the defendant lacks a reasonable opportunity
to object to a fundamental defect in the plea which is clear on
the face of the record and to which "the court's attention should
have been instantly drawn," such that "the salutary purpose of
the preservation rule is . . . not jeopardized" (id. at 666).  On
this appeal, we must apply the foregoing principles to determine
whether, prior to the final imposition of his sentence, defendant
had a practical ability to challenge the validity of his guilty
plea on the theory that it was induced by the promise of an
unlawful sentence, for such an ability to object would preclude
the application of the exception to the preservation rule
delineated in Lopez and its progeny.  On the record before us, we
hold that defendant had a reasonable opportunity to attack the
legality of his guilty plea in the court of first instance on the
same grounds now advanced on appeal.  Because defendant did not
take advantage of that opportunity, he failed to preserve his
current claim for appellate review.

                              I.

        After his arrest and indictment on drug sale charges,
defendant Christian Williams entered into a negotiated plea
bargain with the People.  Specifically, at a scheduled court
proceeding, defense counsel announced that the People had offered

a recommended sentence of three years in prison in exchange for defendant's guilty plea to criminal sale of a controlled substance in the third degree (see Penal Law § 220.39 [1]).  The court asked defense counsel "[w]hat period of prosecution [sic]" had been negotiated, and counsel answered, "It was the minimum, I believe."  When the court asked "[w]hy it would be the minimum," the prosecutor replied, "On my note it indicates that, for [defendant], the post-release supervision time would be two years post-release supervision."  Relying largely on the People's apparent belief in the appropriateness of their proposed disposition, the court agreed to offer defendant a three-year prison term and a two-year period of postrelease supervision in exchange for his guilty plea.

In the course of the ensuing plea colloquy, the court told defendant about the sentence to be imposed, saying:

> "As you came into court today, you were
> charged with the crime to which you pled
> guilty but I hear that there is a predicate
> felony statement, so you theoretically could
> have received up to 12 years, is it?  I lost
> my sentence chart when we transferred
> courtrooms so I don't know.  I think it is up
> to 12 years.  Let's assume it is up to 12
> years based on your prior criminal history.
> You've been given a chance to plead guilty
> and you are going to receive a three-year
> sentence with two years post-release
> supervision.  Do you understand that?"

Defendant answered, "Yes."  The court immediately asked whether defendant "had a chance to speak with" and had, "in fact, spoken with [defense counsel] today and on other days" about his case,

such that counsel had "explained to [defendant] various legal rights and [his] options with regard to this case." Defendant responded in the affirmative.

Later in the plea proceeding, the court delivered the following warning to defendant:

> "<u>Listen carefully. Predicate felony conviction today.</u> If there is a third felony conviction, in theory at least, that would be your third felony conviction and . . . three felony convictions in theory is a big deal problem for anybody in your position. Do you understand that?" (emphasis added).

Defendant indicated that he understood.

Next, the court informed defendant that, to receive a three-year prison term, he had to meet certain conditions during the period of his release prior to sentencing. Specifically, the court told defendant that he had to truthfully discuss his case with the Department of Probation, refrain from committing new crimes and return to court for sentencing. The court further stated:

> "Pay attention. . . . If you comply with those three conditions . . . . then you are guaranteed the three years with the two years post-release supervision. If you violate any of those conditions, I'll decide what's the nature of the violation, whether it is true or not and if I decide that you violated one of the conditions, I don't have to give you the three years with the two years. I might, but I don't have to, and I could theoretically sentence you up to 12 years. If you violate any of three conditions and I decide that you did violate one of those conditions or all of them or some of them, you will not get your plea back, your plea will remain and I'll do what I think is

> appropriate having decided the validity of
> the supposed violation."

Defendant responded that he understood this explanation of the conditions of the plea and the consequences of failing to fulfill them.

The court proceeded to arraign defendant on a predicate felony statement which was filed by the People and alleged that he had a predicate felony conviction for attempted criminal possession of a weapon in the second degree. Defendant declined to challenge the validity of that predicate felony conviction, and he was adjudicated a second felony offender previously convicted of a violent felony. The court declared, "He's a violent predicate which will put him in the range which will make the sentence that I promised a legal sentence." The court ordered an adjournment of approximately two months for fulfillment of the plea conditions and sentencing.

Significantly, though, contrary to the court's statement, while a three-year prison term is within the lawful sentencing range for a second felony drug offender convicted of third-degree criminal sale of a controlled substance (see Penal Law § 70.70 [3] [b] [i]), it was not a sentence lawfully available to defendant in light of his distinct predicate status. Rather, because defendant was a second felony drug offender previously convicted of a violent felony, he faced a statutory sentencing range of six to fifteen years in prison on his third-degree drug sale conviction (see Penal Law § 70.70 [4] [b] [i]).

But, the court was not informed of this issue and never indicated that it learned of the potential problem on its own.

Apparently, at some point after the plea proceeding, defendant was arrested for marijuana and trespass offenses. About three weeks after the entry of defendant's plea, the court held a hearing pursuant to People v Outley (80 NY2d 702 [1993]) to determine whether defendant had violated the terms of his plea agreement. At the hearing, a police officer testified that the officer had arrested defendant upon seeing him smoking marijuana in the lobby of a public housing building. In response to that testimony, defendant presented a notarized letter from his aunt, who alleged that she was a resident of the building at issue and that defendant had been in her apartment at the time of the arrest. The court provided the defense with a short recess to enable the aunt to testify at the hearing, but at the end of the recess, defense counsel notified the court that the defense would rest without calling defendant's aunt to the stand. After hearing the parties' arguments, the court found that defendant had violated the terms of the plea by engaging in misconduct constituting criminal possession of marihuana in the fifth degree (see Penal Law § 221.10 [1]).

About a month later on the date of the scheduled sentencing proceeding, the parties appeared in court and discussed the People's written submissions in support of enhancing defendant's sentence. Defense counsel informed the

court that he had not reviewed those submissions.  The court said, "[O]bviously the sentence is going to be enhanced.  I announced that the last time."  Nonetheless, the court adjourned the case so that the court and counsel could have more time to review the People's arguments.

Two weeks later, the parties appeared before the court for sentencing.  Early in the proceeding, the court reiterated that defendant had violated the terms of his plea deal, and the court noted that, based on the People's written submissions, it appeared that defendant had tried to arrange for the presentation of false evidence of an alibi in connection with his post-plea marijuana offense.  After the prosecutor's argument in favor of an enhanced sentence, the court told defendant and defense counsel that they could "say anything [they] want[ed] on the issue of the appropriate sentence within the range that the law allows, and the circumstances --."  Counsel interrupted and commenced his argument in opposition to the enhancement of defendant's sentence, positing that the evidence at the Outley hearing had not revealed misconduct that warranted an enhanced sentence.  Defendant declined to make any statement about the proposed sentence enhancement, and after a brief exchange between counsel and the prosecutor, the parties brought their arguments to a close.

The court again summarized the conditions of the plea and reiterated its prior finding that defendant had failed to

abide by those conditions when he committed the marijuana offense.  Noting that it was discussing an "enhanced sentence," the court condemned defendant's efforts to present a false alibi to cover up his violation of the plea conditions.  The court stated, "So he's sentenced to 6 years [in prison], which is an appropriate enhancement in view of all of the things that went on related to this case," adding that defendant would also serve a two-year term of post-release supervision.  Counsel asked the court to "note [his] exception" without elaborating on the grounds for the objection, and the court so noted it.  The court then repeated its pronouncement of the sentence and concluded the proceeding.  Subsequently, defendant appealed.

A divided panel of the Appellate Division reversed the judgment, on the law, vacated defendant's guilty plea and remanded the matter to Supreme Court for further proceedings (see People v Williams, 123 AD3d 240, 241-247 [1st Dept 2014]).  The court concluded that defendant's claim fell within the exception to the preservation rule because Supreme Court's alleged error in promising defendant an unlawful three-year prison term in exchange for his guilty plea constituted a due process violation which presented a question of law for appellate review despite the absence of proper preservation (see id. at 244, citing People v Louree, 8 NY3d 541, 545-546 [2007]).  On the merits, the court ruled that the lower court's error affected the voluntariness of defendant's plea, not simply his sentencing expectations, and

that therefore vacatur of the plea was the only proper remedy (see id. at 245-247).

Two Justices dissented and voted to affirm (see id. at 247-250 [Tom, J.P., dissenting]).  In the dissent's view, defendant had to, and failed to, preserve his challenge to the legality of his guilty plea because the exception to the preservation rule does not apply where, as here, a defendant's claim implicates only his or her sentencing expectations and not the voluntariness of the plea itself (see id. at 247-248).  The dissent further opined that defendant's claim lacked merit because the court's imposition of a lawful six-year prison term within the range of punishments promised in the event that defendant violated the terms of the plea agreement met his legitimate sentencing expectations, notwithstanding that the court's promise of a three-year prison term based on his potential compliance with those terms would have resulted in an illegal sentence for the offense to which he pleaded guilty (see id. at 248-250).  One of the Appellate Division dissenters granted the People leave to appeal, and we now reverse on preservation grounds.

## II.

"Preservation--or, more precisely, the lack of preservation--frequently accounts for the disposition of criminal cases in this Court" (People v Hawkins, 11 NY3d 484, 491 [2008]), and we enforce the preservation doctrine with equal regularity in

the trial and plea contexts, remaining mindful that the necessity
of preservation is the rule rather than the exception (see e.g.
People v Leach, __NY3d__, 2016 NY Slip Op 01253, *1-*2 [2016];
People v Crowder, 24 NY3d 1134, 1136-1137 [2015]; People v
Clemons, 49 NY2d 795, 796 [1980]; People v Pascale, 48 NY2d 997,
997-998 [1980]; People v Warren, 47 NY2d 740, 741 [1979]; People
v Delancy, 48 NY2d 972, 973-974 [1979]; People v Adams, 46 NY2d
1047, 1047-1048 [1979]).  Thus, we have held that, generally, "in
order to preserve a challenge to the factual sufficiency of a
plea allocution there must have been a motion to withdraw the
plea under CPL 220.60 (3)" (Lopez, 71 NY2d at 665; see Claudio,
64 NY2d at 858-859).  And, "[u]nder certain circumstances, this
preservation requirement extends to challenges to the
voluntariness of a guilty plea" (People v Peque, 22 NY3d 168, 182
[2013]; see People v Tyrell, 22 NY3d 359, 363-364 [2013]; People
v Murray, 15 NY3d 725, 726 [2010]; People v Toxey, 86 NY2d 725,
726 [1995]; Delancy, 48 NY2d at 973-974).  On the other hand, in
People v Lopez (71 NY2d 662), we concluded that, where a pleading
defendant's recitation of the facts of his or her offense clearly
casts doubt on his or her guilt and the court makes no further
inquiry, the defendant does not have to preserve a claim of fatal
error in the allocution because, as noted above, "the court's
attention should have been instantly drawn to the problem, and
the salutary purpose of the preservation rule is arguably not
jeopardized" (id. at 666).  In People v Louree (8 NY3d 541

[2007]), we adopted a variant of the Lopez exception applicable
to the defendant's claim that his plea was involuntary under
People v Catu (4 NY3d 242 [2005]) based on the particular
circumstances of the defendant's plea and sentencing proceedings
(see Louree, 8 NY3d at 546).

The Appellate Division in the instant case relied
principally on Louree for its determination that defendant did
not need to preserve his claim.  In doing so, that court viewed
Louree as holding that a defendant never has to preserve a claim
that the court violated due process by accepting a guilty plea
without informing the defendant of the direct consequences of the
plea (see Williams, 123 AD3d at 244 ["While such a challenge (to
a plea) must ordinarily be preserved by a motion to withdraw the
plea under CPL 220.60 (3), this does not apply where the trial
court failed to fulfill its obligations to ensure that a plea
conformed with due process"], citing Louree, 8 NY3d at 545-546;
see also id. at 242 ["First, defendant's constitutional claim
that his plea violated due process because it was induced by an
illegal promise need not be preserved"]).  But, the Appellate
Division misapprehended our decisions in Louree and subsequent
cases, which clearly do not categorically exempt due process
claims from the preservation rule in the plea context.

In that regard, in Louree, we excused defendant's
failure to preserve his Catu claim not because the claim
implicated due process, but because the defendant had no

practical ability to assert that the plea was invalid prior to the imposition of sentence.  Specifically, while we stated that, "where a trial judge does not fulfill the obligation to advise a defendant of postrelease supervision during the plea allocution, the defendant may challenge the plea as not knowing, voluntary and intelligent on direct appeal, notwithstanding the absence of a postallocution motion," we explained that we were applying an exception to the preservation rule because we could not "shut our eyes to the actual or practical unavailability of either a motion to withdraw the plea" or a CPL 440.10 motion, noting that "a defendant can hardly be expected to move to withdraw his plea on a ground of which he has no knowledge" (id. at 546).  We further observed that, "if the trial judge informs the defendant of postrelease supervision during the course of sentencing, as also happened here, a defendant may no longer move to withdraw the plea since a motion may only be made under CPL 220.60 (3) '[a]t any time before the imposition of sentence'" (id.).  Hence, our decision to relieve the defendant of any preservation obligation in Louree stemmed in significant part from the defendant's inability to object to the legality of his plea prior to the final imposition of sentence, and not just from the nature of his due process claim.  As a result, Louree does not support the Appellate Division's apparent conclusion that, because defendant here attacked the voluntariness of his plea on due process grounds, his claim was categorically exempt from the preservation

rule.

Importantly, after Louree was handed down and prior to the Appellate Division's decision here, we dispelled any notion that Louree establishes such a broad exception to the preservation rule. So it was that, in People v Peque (22 NY3d at 168), we reiterated the general rule that, even where the defendant challenges a plea on voluntariness and due process grounds, he or she must preserve that challenge via timely objection depending on the circumstances of the case, and we clarified that, "[t]aken together, Lopez and Louree establish that where a defendant has no practical ability to object to an error in a plea allocution which is clear from the face of the record, preservation is not required" (id. at 182). In that very decision, we also concluded that a defendant could have preserved, and failed to preserve, his contention that the trial court's failure to apprise him that deportation was a potential consequence of his plea rendered the plea involuntary (see id. at 183).

Thus, as Louree indicates and Peque crystallizes, if a defect in a plea allocution is clear on the face of the record and implicates due process, the defendant nonetheless must preserve his or her claim that the defect made the plea involuntary unless the defendant has no practical ability to do so. Moreover, after the Appellate Division decided this case, we again emphasized that a defendant must object to the court's

failure to apprise him or her of the consequences of a guilty plea if he or she has the opportunity to lodge such an objection (see People v Crowder, 24 NY3d 1134, 1136-1137 [2014]; see also People v Conceicao, 26 NY3d 375, 381 [2015] ["If a defendant has an opportunity to seek relief from the sentencing court, he must preserve his challenge to the plea"]).

It is no wonder, then, that even defendant does not embrace the Appellate Division's rationale for dispensing with the preservation requirement here, but merely argues that he is entitled to the benefit of the exception to the preservation rule based on the absence of a chance to raise his claim below. In that regard, defendant contends that Supreme Court violated due process and improperly induced his guilty plea because it failed to tell him at the plea proceeding that it could not legally order a three-year prison term, which the court promised him in exchange for his guilty plea and his compliance with the plea conditions, upon defendant's conviction for third-degree drug sale in light of defendant's status as a second felony drug offender with a prior violent felony conviction. By defendant's reckoning, since the court never announced that the promised sentence was illegal and his lawyer did not display any recognition of the unlawfulness of the proposed sentence on the record, neither defendant nor counsel had any practical ability to challenge the voluntariness of the plea on grounds of which they were unaware.

However, even assuming that the error alleged by defendant impacts the voluntariness of the plea as opposed to his sentencing expectations -- an issue hotly contested by the parties and unaddressed by our decision today -- defendant could have raised his current claim prior to the final imposition of sentence in Supreme Court, and therefore, he was obligated to, and failed to, preserve his claim.[1]

As our previous summary of the record shows, and contrary to the assertions of our dissenting colleagues (see dissenting op. at 12-13), the defense had multiple opportunities to preserve defendant's current challenge to his plea and seek clarification of the matter, as such opportunities arose from, inter alia: the court's comment at the plea proceeding about its uncertainty of the legality of the promised sentencing options; the court's statements at the plea proceeding about the determinative nature of defendant's predicate felony offender status; the numerous adjournments, the Outley hearing and the post-hearing court appearance that transpired between the plea and sentencing proceedings, which could have allowed counsel and defendant to inquire further into the legality of the promised sentencing options and defendant's understanding of the plea; and

---

[1]   Notably, if, as the People maintain, defendant's claim raises an issue pertaining to his sentencing expectations and not the voluntariness of his plea, it is undisputed that such a claim would have to be preserved to at least the same extent as a challenge that genuinely relates to the voluntariness of the plea.

the court's comments at sentencing, which offered an opening for
counsel to confirm the legality of the court's sentencing options
and its effect on the validity of the plea.  By failing to seize
upon these opportunities to object or seek additional pertinent
information, defense counsel failed to preserve defendant's claim
for appellate review (see generally Conceicao, 26 NY3d at 381;
Crowder, 24 NY3d at 1136-1137; see People v Murray, 15 NY3d 725,
727 [2010] [where a practical ability to object to the validity
of the plea arose at the sentencing proceeding, defendant's
failure to object or move to withdraw the plea rendered his claim
unpreserved]; cf. Conceicao, 26 NY3d at 383-384 [observing that,
although defendants did not have to preserve claims for plea
vacatur due to lack of information and circumstances supplying a
practical ability to object, adjournments in the proceedings and
further presentence litigation strengthened attorneys' and
defendants' comprehension of the consequences of the pleas]).[2]

---

[2]  Our dissenting colleagues contend that "[i]t is
particularly unjust to require preservation in a case such as the
one before us, where the error escaped discovery of all those
involved and trained in the law--the judge, prosecutor and
defense counsel" (dissenting op. at 10-11).  This comment appears
to be a mere rephrasing of the dissent's argument that defendant
lacked a practical opportunity to raise his current claim before
the court of first instance.  We simply disagree because the
record discloses several instances where, in light of the court's
comments and the course of the proceedings, the defense could
have made an objection based on, or sought clarification of, the
legality of a three-year prison term upon his conviction.  If the
dissent means to suggest that defendant did not have to preserve
his claim, regardless of any opportunity to do so, because the
record does not affirmatively reveal that he and his attorney had

          Similarly, to the extent defendant suggests that the

court also improperly made him a firm promise of a three-year

prison term even if he committed a new crime, he could just as

easily have preserved that claim as well.  At the court

appearance following the Outley hearing, the court announced its

intention to enhance the sentence beyond the promised three-year

prison term based on defendant's commission of a new marijuana

offense.  Later, at sentencing, the court again referenced its

plan to increase the sentence, and prior to the end of the

proceeding, it proposed to increase the sentence to a six-year

prison term.  In response, defendant and his attorney could have

objected to the court's plan to dishonor the purported promise of

a three-year prison term in connection with defendant's violation

of the plea conditions if such a promise, or the legal viability

---

actual knowledge that the court committed an alleged error, such
an assertion is untenable.  Although we have excused the failure
to use the objection method of preservation to preserve a claim
of a fundamental defect in a plea based in part on the lack of an
opportunity for the defendant to have discovered the error, we
have never held, either in the plea context or elsewhere, that
the defendant's lack of actual knowledge that an error has
occurred, despite an opportunity to learn of the error, may
excuse the defendant from having to preserve his or her claim via
objection.  Indeed, such a theory would swallow the preservation
doctrine whole, thereby eviscerating an essential limit on our
jurisdiction (see People v Turriago, 90 NY2d 77, 80 [1997];
People v Kelly, 5 NY3d 116, 119 [2005]), because virtually every
defendant could rely on a record silent on the subject of the
defendant's actual knowledge to argue that he or she did not in
fact comprehend the erroneous nature of the court's actions and
therefore had no obligation to object.  We reject this sweeping
knowledge-based exception to the preservation rule.

of it, had motivated defendant to plead guilty.  Since the
defense did not inquire into the legality of a three-year prison
term in the event of a violation of the plea terms or demand that
the court honor the alleged promise, defendant failed to preserve
any complaint about the court's enhancement of the sentence and
advisements regarding what would occur in the event of a
violation.

Finally, given defendant's failure to preserve his
present claim that his plea must be vacated, we express no
opinion on the merits of the claim, and we remit the case to the
Appellate Division, which may decide whether to review
defendant's unpreserved challenge to the validity of his plea as
a matter of discretion in the interest of justice.  As a result,
just as our decision on procedural grounds should not be read to
suggest that defendant would have been entitled to vacatur of his
plea had he preserved his current claim, it also should not be
taken as an endorsement of Supreme Court's handling of the
proceedings below, which all parties agree was far from ideal
irrespective of the ultimate validity of the plea.[3]

---

[3]  Notably, the Legislature is aware that illegal sentences
may sometimes be imposed and has created a mechanism to address
this problem.  That mechanism, CPL 440.40, authorizes the court,
upon the People's motion, to vacate an illegal sentence within
one year of imposition.  Had defendant received the illegal
sentence that was to his benefit on his third-degree drug sale
conviction, the People would have had only one year to move to
vacate the illegal sentence (see Campbell v Pesce, 60 NY2d 165,
168-69 [1983]).

### III.

Because defendant, via counsel, could have raised his current challenge to the propriety of his guilty plea prior to the imposition of sentence, he was obligated to preserve his claim, and his failure to object to the plea in the court of first instance precludes our review of his present contention. Accordingly, the order of the Appellate Division should be reversed and the case remitted to that court for consideration of the facts and issues raised but not determined on the appeal to that court.

People of the State of New York v Christian Williams

No. 36

RIVERA, J.(dissenting):

On this appeal, we are presented with a bargained-for plea based on an illegal minimum incarceratory sentence, offered as an inducement for defendant's waiver of his constitutionally protected right to liberty and the guarantees afforded by his right to trial. In violation of defendant's due process rights, the judge at the plea hearing failed to ensure the defendant understood the direct sentencing consequences of the plea, and wrongly informed defendant that the offer was a legal minimum rather than one precluded by law. Thus, since defendant's plea was not knowing, voluntary and intelligent, the plea must be vacated. No less important to my determination that this plea cannot stand is the indisputable fact that the judicial practice employed in defendant's case jeopardizes the public confidence in plea bargaining and the criminal justice system as a whole.

Unlike the majority, I conclude that we are not procedurally foreclosed from addressing the merits of defendant's claims on direct appeal. Quite simply, the usual rules of preservation do not govern our review because this is far from the usual case. According to the record, the judge represented

- 1 -

to defendant that under the law, in exchange for pleading guilty, he could receive a sentence of three years incarceration, followed by two years of postrelease supervision.  The judge failed to independently confirm whether the sentence promise was in fact legal, and instead deferred that determination to "the learned folks in the prosecution's office."  However, the judge's reliance on the work of others was misplaced because the information available to the court at the plea established that the only lawful minimum incarceratory time applicable to defendant was six years--a fact the judge failed to discuss with defendant before he entered his plea.  Six years imprisonment is coincidentally also the sentence imposed by the judge after he determined that defendant's sentence should be enhanced for violation of a plea condition, namely defendant's possession of marijuana in the lobby of a residential building, conduct for which defendant was never criminally charged.

I.

Under our laws, the judge is responsible for accepting a plea after ensuring its validity, and the judge is the sole person authorized to impose a sentence.  It is the "trial court [which] has the constitutional duty to ensure that a defendant, before pleading guilty, has a full understanding of what the plea connotes and its consequences" (People v Louree, 8 NY3d 541, 544 [2007], quoting People v Ford, 86 NY2d 397, 402-402 [1995]).

Thus, the trial judge must ensure "that the
record...[is] clear that the plea represents a voluntary and
intelligent choice among the alternative courses of action open
to the defendant" (People v Belliard, 20 NY3d 381, 385 [2013]
[internal quotations and citations omitted]).  In addition, the
"sentence is primarily a judicial responsibility" and so the
"judge may not ignore those provisions of law designed to assure
that an appropriate sentence is imposed" (People v Selikoff, 35
NY2d 227, 238, 240-241 [1974], cert denied 35 NY2d 227 [1975];
see also CPL 380.20 ["The court must pronounce sentence in every
case where a conviction is entered"];  Garner v New York State
Dept. of Correctional Services, 10 NY3d 358, 362 [2008],
superceded by statute People ex rel. Joseph II. v Supt. of
Southport Correctional Facility, 15 NY3d 126 [2010] ["the
sentencing judge—and only the sentencing judge—is authorized to
pronounce the PRS component of a defendant's sentence"]).

When a plea fails to comply with the due process
requirement that the plea represent a "voluntary, knowing and
intelligent choice among alternative courses of action" (People v
Catu, 4 NY3d 242, 245 [2005], quoting Ford, 86 NY2d at 403), the
plea must be vacated (People v Hill, 9 NY3d 189, 193 [2007];
Catu, 4 NY3d at 244).  Where, as here, the plea is based on an
illegal minimum period of incarceration, the plea is defective at
its inception, because defendant cannot have made a knowing,
voluntary and intelligent decision to plead when he did not have

knowledge that his bargained-for sentence was half the legal minimum (see Catu, 4 NY3d at 245 [failure of the court to advise defendant of postrelease supervision required reversal of the conviction]).  Moreover, the requirements of due process refer not to illusory plea offers, but to plea offers that can in fact, and under law, be fulfilled (see Selikoff, 35 NY2d at 241).  "Thus, any sentence 'promise' at the time of plea is, as a matter of law and strong public policy, conditioned upon its being lawful and appropriate...." (id. at 238).  Therefore, a court must also ensure that a defendant's bargained-for-benefit is a lawful promise.  When a court fails to do so, and treats as wholly valid a plea that is constitutionally defective, a defendant may seek to be relieved from the plea bargain by vacating the plea  (People v Cameron, 83 NY2d 838, 839 [1994]).

Furthermore, both the United States Supreme Court and this Court have determined that "a guilty plea induced by an unfulfilled promise either must be vacated or the promise honored" (Selikoff, 35 NY2d at 241, citing Santobello v New York, 404 US 257, 260 [1971]).  In the case of an illegal sentencing promise, the judge's only option is to vacate the plea because specific performance of the agreed upon minimum prison term is unavailable.  However, the judge here failed to follow any lawful course to remedy the due process violation inherent in the plea, and instead imposed a sentence that was double the minimum offered to defendant.  Defendant's plea must therefore be

vacated.

The People contend that defendant's plea was knowing and voluntary because defendant understood that if he breached the plea conditions imposed by the court he faced a maximum sentence of 12 years' imprisonment, and the court met defendant's legitimate sentencing expectations by imposing a six-year prison term. The sentence imposed is irrelevant to the matter at hand because "the defect lies in the plea itself and not in the resulting sentence" (Hill, 9 NY3d at 191), as a consequence "the court[] violated defendant's due process rights--not the defendant's sentencing expectations" (id. at 193).

In any event, the People's argument is based on their misreading of the plea proceeding record. As that record establishes, the judge never retreated from three years as the baseline for defendant's minimum sentence, and on several occasions expressly measured defendant's sentence against that three-year floor. For example, in describing the beneficial sentence defendant would receive in exchange for his guilty plea, the judge told defendant that under the high end of the sentencing spectrum he could have imposed up to 12 years imprisonment--which as it turned out was incorrect[1]--and reminded defendant that "[y]ou've been given a chance to plead guilty and you are going to receive a three-year sentence with two years

---

[1] The correct sentence was a determinate term between 6 and 15 years, followed by a term of post-release supervision between 1½ and 3 years (see Penal Law § 70.70[4][b][i]).

post-release supervision."  When discussing the plea conditions, the judge said that if defendant complied he was "guaranteed the three years with the two years post-release supervision," and if he did not comply, he was still eligible to receive the three-year term.  Thus, the judge continued to hold out three years as the minimum from which any sentence would be determined.  Of course, the judge could not sentence defendant to a legal term of three years, and thus even under the People's analysis, defendant's reliance on that minimum rendered his plea involuntary.

The People further argue that a sentencing court has the inherent power to correct an illegal sentence (People v Williams, 87 NY2d 1014, 1015 [1996]).  True enough, but a court could not have corrected the sentence to coincide with the plea offer.  Put another way, defendant could not be legally sentenced to three years' imprisonment for the crime to which he pled guilty.

Nevertheless, the People contend that under People v Collier if the original promise could not be imposed, the sentencing court could impose another lawful sentence as long as it "comports with defendant's legitimate expectations" (22 NY3d 429, 434 [2013]).  According to the People, under that principle, because defendant received the legal statutory minimum of six years, the ultimate sentence imposed fulfilled his expectations of a "minimum" sentence.  The People apparently ignore that the

original sentencing offer was a minimum of three years, not six, and that three years was the number of consequence to defendant. As this Court has recognized "the overwhelming consideration for the defendant is whether [he or she] will be imprisoned and for how long" (People v Gravino, 14 NY3d 546, 559 [2010]).

The People's further claim that if defendant had complied with the plea conditions he could have received a three-year sentence by repleading to a lesser offense. Yet for defendant to plead down, the original plea must be vacated-- exactly the relief the People oppose and which defendant seeks on this appeal.[2]

To the extent the People argue that defendant could be subjected to a legal sentence greater than the three years' imprisonment he was promised, we have never held that a court may impose a sentence that exceeds the minimum period expressly offered as an inducement for a guilty plea, and our case law supports the opposite conclusion.[3] Cases where a sentencing

---

[2] It is worth noting that defendant was sentenced in January of 2012. If he had replead at that point to the originally agreed on three-year sentence, his sentence would already be complete.

[3] The Court's holding in People v DeValle (94 NY2d 870 [2000]), is not to the contrary. In that case, the Court held that the trial court had inherent power to correct an illegal sentence where defendant did not seek withdrawal of the plea, and also failed to establish detrimental reliance on the illegal sentence that could not be addressed by returning him to his pre-plea status, if he so desired. Here, defendant seeks the remedy the Court in DeValle recognized as appropriately available to the defendant on the facts of that case. Thus, unlike the

court "fixed" an illegal sentence through imposition of a lawful sentence are distinguishable because none of them dealt with an increase in the <u>minimum</u> amount of time defendant could expect. In <u>Collier</u>, defendant, as part of his plea bargain, pled guilty to two counts of robbery and received a sentence of 25 years in prison on the first count, and five years on the other count -- to run either consecutively or concurrently based on the judge's discretion (22 NY3d at 431). The judge imposed the sentences consecutively and defendant appealed, arguing both that the sentence was excessive and that the five-year sentence was illegal (<u>id.</u> at 432). The Appellate Division agreed that the five-year sentence was illegal, vacated the sentence, and remitted the matter for resentencing (<u>id.</u>). Defendant was resentenced to <u>concurrent</u> terms of 25 years and 10 years (<u>id.</u>). Defendant appealed, arguing that his plea had to be vacated because his expectation when pleading guilty on the first plea had been five years (<u>id.</u>). However, our Court upheld defendant's sentence of 25 years because it fit within defendant's original expectation of a sentence from 25 years to 30 years' imprisonment (<u>id.</u> at 433-434).

In <u>Williams</u>, this Court rejected a defendant's challenge to a resentence that imposed an enhanced maximum period

---

defendant in <u>DeValle</u> who, in essence, demanded specific performance of an illegal sentence, defendant here seeks no more than what the law allows, namely to be returned to his pre-plea status.

of incarceration directly within the period expressly explained to defendant at the time of the plea (id.). As the facts of that case establish, defendant was originally sentenced to an illegal indeterminate prison term of 3 1/2 to 7 years, and thereafter resentenced to a lawful term of 3 1/2 to 10 1/2 years' imprisonment.  The Court concluded that defendant did not have a legitimate expectation of finality in the prior illegal sentence because the judge had informed defendant in advance that he was pleading to a crime that, by law, allowed the judge "to impose a sentence of up to 15 years" (id.).  As relevant to the instant appeal, the defendant's minimum of 3 1/2 years imprisonment went unchanged from the illegal sentence to the resentence.  Thus, this Court properly focused on the defendant's maximum sentencing exposure.

Similarly, the Court held in People v Murray that a judge does not "arbitrarily trifle[] with the legitimate expectations of [a] defendant based on the plea" when the defendant is told that the plea is conditional, and advised of the sentence to be imposed should defendant violate the court's terms (15 NY3d 725, 726 [2010]). In Murray, the judge informed the defendant that he would "probably" receive youthful offender status and a ninth-month sentence if he complied with certain plea conditions set by the court.  Otherwise, the court would sentence the defendant as an adult (id.).  When the defendant failed to comply, the court imposed an adult sentence, which this

Court upheld on appeal as "rooted in the terms of defendant's plea and evident to all concerned" (id.).  The court in Murray had expressly stated that the consequence of a violation of the plea condition was imposition of a sentence wholly unlike the sentence available to a youthful offender.  In contrast, the judge in defendant's case always indicated that the sentence was based on a three-year minimum imprisonment term.

The decisions in Collier, Williams and Murray presuppose that a defendant who pleads guilty while fully aware of the period of incarceration attached to the plea is making a choice to bargain away freedom for at least the minimum, and up to the maximum, as described by the court.  In accordance with this guiding principle, defendant's plea must be vacated because it was based on a three-year illegal minimum sentence, which the court communicated as the lowest end of the applicable sentencing range.

II.

When a judge fails "to ensure that defendant understands the nature of the charge and that the plea is intelligently entered," as a matter of due process and fundamental fairness, it is unreasonable to demand preservation by objection.  It is particularly unjust to require preservation in a case such as the one before us, where the error escaped discovery of all those involved and trained in the law--the

judge, prosecutor and defense counsel.

Moreover, the preservation rule imposed by the majority is not unqualifiedly required by our case law under the circumstances presented in this appeal. Preservation serves important purposes. It allows a claim to be brought to the trial court's attention in order to "provide the opportunity for cure before a verdict is reached and a cure is no longer possible," "advance[] the truth-seeking purpose of the trial" and ensure "the goal of swift and final determinations of the guilt or nonguilt of a defendant" (People v Gray, 86 NY2d 10, 20-21 [1995]). However, we have recognized that rules of preservation must give way under circumstances where "the salutary purpose of the preservation rule is arguably not jeopardized" (People v Lopez, 71 NY2d 662, 666 [1988]). Exceptions to preservation are narrow, but not so restrictive as to be meaningless.

Thus, the Court recognized in Lopez that preservation is not required in the "rare case" where the voluntariness of the plea is called into question by a defendant's factual recitation negating an essential element of the crime, and the court fails to adequately undertake its duty-bound inquiry to ensure the defendant understands the charge and plea (see id.). In such a case "the court's attention should have been instantly drawn to the problem" (id.). In Louree, the Court employed a pragmatic approach to preservation, and reviewed on direct appeal a Catu violation, because the Court recognized "the actual or practical

unavailability" of a motion to challenge a plea which cannot be "knowing, voluntary and intelligent if a defendant is ignorant of a direct consequence because of a deficiently conducted allocution" (Louree, 8 NY3d at 545-546).

Defendant's case for direct appellate review to our Court, notwithstanding the lack of a postallocution motion, is at least as, if not more, compelling as these cases.  For example, in Lopez, the Court made clear that preservation is not required when a judge fails, in accordance with a judge's constitutional duty, to make an additional inquiry once the voluntariness of the plea is placed in question during the allocution (71 NY2d at 666).  In defendant's case the illegality of the sentence offer was similarly evident from the record.  Yet, the judge proceeded to inform defendant that the offer was a legal minimum term of incarceration, without first having confirmed the statutory sentencing range.  Thus, the judge failed to take appropriate steps to ensure that defendant understood the nature of the sentencing offer.

As for the exception recognized in Louree, here defendant had no genuine reasonable opportunity to present the judge with a counter view of the inherently defective plea offer. In Louree, the lack of opportunity was due to the timing of the error.  The trial judge did not mention postrelease supervision at the allocution, depriving the defendant of information necessary to determine whether to move to withdraw his plea.

Nevertheless, this Court did not require that defendant investigate whether the judge's description of the sentence was correct. When the trial judge informed the defendant at sentencing about postrelease supervision, it was too late because a motion to withdraw a plea may only be made under CPL 220.60 (3) before the imposition of sentence (Louree, 8 NY3d at 546).

Here, once the judge stated at the plea hearing that the minimum was lawful, defendant relied on that statement and had no reason for further inquiry into the legality of the plea offer. Like the defendant in Louree, defendant Williams based his decision to plead guilty on the judge's error, and should be viewed as similarly lacking the opportunity to move to withdraw. Moreover, application of the preservation requirement here presupposes defendant's prior awareness of the very error that the judge was required to present to the defendant (see People v Peque, 22 NY3d 168, 216 [2013][Lippman C.J., dissenting] ["A preservation requirement presumes knowledge that would make the advisement unnecessary—a classic catch 22"]). However, "if the prosecutor, defense counsel and the court all suffered from the same misunderstanding" about the plea offer, "it would be unreasonable to conclude that defendant understood it" (People v Worden, 22 NY3d 982, 985 [2013]).[4]

---

[4] The Majority is incorrect in its assertion that allowing defendant to bring a direct claim would "swallow the preservation doctrine whole" (majority op. at 16 fn 2). Here, defendant should be absolved from the normal preservation rules, not solely

        The circumstances of this case further illustrate the
inapplicability of preservation to defendant's claim.  The nature
of postallocution motion practice presumes that a defense
attorney has a reason to question the validity of the plea
process and the offer.  This makes sense in the context of a plea
allocution, which involves a defendant's responses to questions
from the judge, intended to identify a defendant's lack of
understanding and volition, and where defense counsel, acting on
behalf of the defendant, has reason to ensure the allocution
meets constitutional requirements (see People v Tyrell, 22 NY3d
359, 366 [2013] [plea was defective where "the records do not
affirmatively demonstrate" that defendant understood the waiver
and "there is a complete absence of discussion" by the court,
defense counsel or defendant of the pertinent constitutional
rights]; Lopez, 71 NY2d at 667 [trial court conducted a proper
inquiry into defendant's allocation to ensure the factual
sufficiency of defendants factual recitation]; People v Harris,
61 NY2d 9, 17 [1983] ["a record that is silent will not overcome
the presumption against waiver"]).  However, in the case before
us, defense counsel negotiated the plea with the prosecutor and

_____

because he lacked actual knowledge of the error, as the Majority
asserts, but because he relied on an assertion of the trial judge
that the plea offer was based on a legal minimum sentence.  When
a court's statement creates the perception that no further
investigation of a sentence is needed, defendant cannot be held
responsible for relying on that statement.

the court accepted the offer as lawful.  As a consequence defendant had no reason to question the legality of its terms.

Application of the preservation rule to these facts absolves the court of its constitutional duty to ensure that defendant is informed of the direct consequences of his plea, and limits defendant's remedial options.  The majority states the defendant can request the Appellate Division exercise its interest of justice authority to grant him relief, (majority op. at 18) but there are no assurances that the court will be disposed in defendant's favor.  Here, two justices dissented, finding the plea comports with constitutional requirements. Alternatively, the majority states defendant can proceed with an ineffective assistance of counsel claim.  However, as with a <u>Catu</u> violation, the error here is apparent on the record and therefore an article 440 motion is improper (<u>see</u> CPL 440.10 [2] [b], [c]; <u>People v Cooks</u>, 67 NY2d 100, 104 [1986] ["When...sufficient facts appear on the record to permit the question to be reviewed, sufficiency of the plea allocution can be reviewed only by direct appeal. Only in the unusual situation that sufficient facts with respect to the issue do not appear on the record is a CPL 440.10 motion to vacate available as a means of review"]).  All the while, defendant has served more than the three year minimum he was promised.

It seems apparent that the salutary purpose of the preservation rule is not furthered by refusing to consider

defendant's claim on direct review to this Court (Lopez, 71 NY2d at 666).  Therefore, defendant should be permitted to pursue his challenge to the validity of the plea by direct appeal to us.


III.

Defendant's case is yet another reminder that our criminal justice system depends on the proper administration of plea bargains (Santobello, 404 US at 262 ["'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged"]).  As the United States Supreme Court has recognized, "ours is for the most part a system of pleas, not a system of trials" (Missouri v Frye, 132 SCt 1399, 1407 [2012] [internal quotations and citations omitted]).  "In today's criminal justice system...the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant" (id. at 1407).  "[P]lea negotiation serves the ends of justice" (Selikoff, 35 NY2d at 233).  More specifically, the final product of negotiation, the bargained-for promise, ensures the "prompt and largely final disposition of most criminal cases"; avoids the "corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial"; "protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release"; and "by shortening the time between charge and disposition, it enhances whatever may be the

rehabilitative prospects of the guilty when they are ultimately imprisoned" (Santobello, 404 US at 261).

The legitimacy of our "bargain-for-sentence" criminal process is based on the assurance that where promises are made to induce a defendant's guilty plea, they are capable of being enforced (see id. at 262 ["when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"]).  Without such assurances defendants would be loathe to engage in a risky high-stakes negotiation involving trading personal liberty interests in exchange for no benefit at all.  Thus, a criminal justice system that tolerates unenforceable bargains increases the potential "detrimental effect on the criminal justice system that will result should it come to be believed that the State can renege on its plea bargains with impunity notwithstanding defendant's performance" (People v Danny G., 61 NY2d 169, 176 [1984], quoting People v McConnell, 49 NY2d 340, 349 [1980]).  Similarly, because illegal sentencing promises can bear no assurance of enforcement, they undermine public confidence in plea bargains, and discourage defendants from entering these agreements.  It is therefore crucial that "the court in overseeing and supervising the delicate balancing of public and private interests in the process of plea bargaining" (Selikoff, 35 NY2d at 243), conduct its constitutional duty to ensure the lawfulness of promises leading

to a defendant's incarceration.  The judge here failed to fulfill his duty, and the sole remedy for the defect presented on this record is to vacate the plea.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order reversed and case remitted to the Appellate Division, First Department, for consideration of the facts and issues raised but not determined on the appeal to that court.  Opinion by Judge Abdus-Salaam.  Chief Judge DiFiore and Judges Pigott, Stein and Garcia concur.  Judge Rivera dissents and votes to affirm in an opinion in which Judge Fahey concurs.


Decided April 5, 2016