[4 NE3d 346, 981 NYS2d 336]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CAVELL CRAIG TYRELL, Appellant. (App Term No. 10-290.)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CAVELL CRAIG TYRELL, Appellant. (App Term No. 10-288.)

Argued November 13, 2013; decided December 12, 2013

**POINTS OF COUNSEL**

*Steven Banks, The Legal Aid Society*, New York City (*Harold V. Ferguson, Jr.*, of counsel), for appellant in the first and second

above-entitled actions. The Appellate Term erred when it held that appellant's plea proceeding demonstrated that appellant had pleaded guilty knowingly, intelligently and voluntarily. (*Boykin v Alabama*, 395 US 238; *People v Lopez*, 71 NY2d 662; *People v Harris*, 61 NY2d 9; *Brady v United States*, 397 US 742; *United States v Dominguez Benitez*, 542 US 74; *Bordenkircher v Hayes*, 434 US 357; *Hanson v Phillips*, 442 F3d 789; *Parke v Raley*, 506 US 20; *Henderson v Morgan*, 426 US 637; *People v Moore*, 71 NY2d 1002.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Ryan Gee* and *Patrick J. Hynes* of counsel), for respondent in the first and second above-entitled actions. Defendant's complaints about his guilty plea are not preserved for appellate review. In any event, the existing record demonstrates that defendant pleaded guilty knowingly, voluntarily, and intelligently. (*People v McNair*, 13 NY3d 821; *People v Clarke*, 93 NY2d 904; *People v Johnson*, 82 NY2d 683; *People v Mackey*, 77 NY2d 846; *People v Mayers*, 74 NY2d 931; *People v Lopez*, 71 NY2d 662; *People v Boyd*, 12 NY3d 390; *People v Mox*, 20 NY3d 936; *People v Toxey*, 86 NY2d 725; *People v Serrano*, 15 NY2d 304.)

### OPINION OF THE COURT

GRAFFEO, J.

In *Boykin v Alabama* (395 US 238 [1969]), the United States Supreme Court held that a defendant who enters a guilty plea must voluntarily and intelligently waive several federal constitutional rights, namely, the right to a trial by jury, the right to confront one's accusers and the privilege against self-incrimination. Because the records in the cases before us are silent as to defendant's waiver of these fundamental rights, the pleas must be vacated.

## I

In the first of two appeals involving defendant Cavell Craig Tyrell (County index No. 570026/10), a police officer observed defendant and another person sell a small quantity of marihuana to two individuals in February 2009. The officer immediately stopped all four participants, recovering money and a small bag of marihuana from defendant, and another bag of marihuana from one of the buyers. Defendant was charged by misdemeanor complaint with criminal sale of marihuana in the fourth degree (Penal Law § 221.40) and criminal possession of marihuana in the fifth degree (Penal Law § 221.10 [1]).

Defendant appeared for arraignment, with counsel, two days after his arrest. The prosecutor offered a sentence of time served in exchange for a guilty plea. In response, defense counsel queried whether a "marijuana ACD" (adjournment in contemplation of dismissal) was available. The prosecutor answered in the negative. Defense counsel then stated that "[w]e have a disposition. At this time [defendant] authorizes me to withdraw his previously entered plea of not guilty and enter a plea of guilty to Penal Law Section 221.10, criminal possession of marijuana in the fifth degree." The colloquy concluded with the court's imposition of the sentence: "Time served. Enter judgment."

Defendant appealed from the judgment of conviction and sentence, seeking vacatur of his plea on the basis that it was not voluntary, knowing and intelligent. Specifically, he asserted that the plea was invalid because the record did not affirmatively demonstrate the waiver of his *Boykin* rights.

The Appellate Term affirmed (37 Misc 3d 16 [App Term, 1st Dept 2012]), reasoning that defendant failed to preserve his *Boykin* claim for appellate review by not bringing a postallocution motion to withdraw the plea. As an "alternative holding," the court found that the plea colloquy evinced a voluntary, knowing and intelligent plea. A Judge of this Court granted defendant leave to appeal (19 NY3d 1105 [2012]), and we now reverse.

## II

In the second case (County index No. 570027/10), the same defendant was arrested in October 2009 following his participation in a buy-and-bust operation involving the sale of marihuana to an undercover officer. As a result, defendant was charged in a misdemeanor complaint with criminal sale of marihuana in the fourth degree (Penal Law § 221.40).

Later that same day, defendant appeared with counsel for arraignment. At the outset of the proceeding, the prosecutor offered defendant a sentence of 15 days in jail in exchange for a guilty plea to the crime charged. Defendant, through counsel, refused the offer. After a discussion regarding potential bail terms, defense counsel informed the court that defendant would be willing to plead guilty for time served. The court rejected the request, but offered a jail sentence of 10 days. Defense counsel responded that defendant was willing to accept that offer.

Defendant then stated that he agreed to plead guilty and acknowledged his participation in the drug sale. The court accepted defendant's plea and immediately imposed the 10-day jail sentence.

Defendant appealed from the judgment of conviction and sentence, arguing that his plea must be vacated because it was not entered voluntarily, knowingly and intelligently. As in the first case, he urged that the waiver of his *Boykin* rights was nonexistent.

Affirming the conviction (36 Misc 3d 133[A], 2012 NY Slip Op 51309[U] [App Term, 1st Dept 2012]), the Appellate Term concluded that defendant's claim was unpreserved because he did not file a CPL 220.60 (3) motion to withdraw or a CPL 440.10 motion to vacate. Alternatively, the court reviewed the plea minutes and determined that the plea was valid. A Judge of this Court granted defendant leave to appeal, and we now reverse.

### III

As a threshold matter, the People contend that the Appellate Term correctly found that defendant's claims are unpreserved in both cases. Relying on *People v Lopez* (71 NY2d 662 [1988]), the People maintain that defendant was required to file a postallocution motion to preserve his contentions and that his failure to do so renders us without authority to review them. Defendant counters that we should analogize these cases to *People v Louree* (8 NY3d 541 [2007]), where we held that a defendant can raise a *Catu** violation—i.e., a claim that the plea was involuntary because of the trial court's failure to inform defendant of a term of postrelease supervision—on direct appeal notwithstanding the absence of a postallocution motion. Under the particular circumstances of these cases, we conclude that defendant's *Boykin* claims are reviewable on direct appeal.

In *Lopez*, we stated that "in order to preserve a challenge to the factual sufficiency of a plea allocution there must have been a motion to withdraw the plea under CPL 220.60 (3) or a motion to vacate the judgment of conviction under CPL 440.10" (*Lopez*, 71 NY2d at 665). Subsequent case law has made clear that a postallocution motion is generally required to raise other "claim[s] that a guilty plea is invalid"—even those unrelated to the factual recitation—and that "[u]nder certain circumstances,

---

* *People v Catu* (4 NY3d 242 [2005]).

this preservation requirement extends to challenges to the voluntariness of a guilty plea" (*People v Peque*, 22 NY3d 168, 182 [2013]; *see also People v Clarke*, 93 NY2d 904, 906 [1999]; *People v Johnson*, 82 NY2d 683, 685 [1993]).

But in *Lopez* we carved out a narrow exception to the preservation requirement for the "rare case" in which "the defendant's recitation of the facts underlying the crime pleaded to clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea" (*Lopez*, 71 NY2d at 666). We also recognized a limited exception in *Louree*, concluding that a defendant can raise a *Catu* claim on direct appeal because of "the actual or practical unavailability of either a motion to withdraw the plea" or a "motion to vacate the judgment of conviction" (*Louree*, 8 NY3d at 546; *see also Peque*, 22 NY3d at 182-183 ["Taken together, *Lopez* and *Louree* establish that where a defendant has no practical ability to object to an error in a plea allocution which is clear from the face of the record, preservation is not required. At the same time, there are significant constraints on this exception to the preservation doctrine"]).

Here, whether we characterize these cases as falling within the *Lopez/Louree* exception or treat defendant's claims as implicating rights of a constitutional dimension directed to the heart of the proceedings—i.e., a mode of proceedings error for which preservation is not required—defendant's *Boykin* claims are reviewable on direct appeal. Contrary to the Appellate Term's suggestion, defendant could not have brought a CPL 220.60 (3) plea withdrawal motion in either case because the plea and sentence occurred during the same proceeding (*see* CPL 220.60 [3] [providing that a motion to withdraw must be made "*before* the imposition of sentence"]). Likewise, he could not have filed a CPL 440.10 motion because the error in these cases was "clear from the face of the trial record" (*People v Stewart*, 16 NY3d 839, 840 [2011]; *see also People v Cooks*, 67 NY2d 100, 104 [1986]; CPL 440.10 [2] [c]). Putting aside any practical difficulties in defendant's ability to bring a postallocution motion, the complete absence of any indication that defendant waived his *Boykin* rights could also be viewed as a mode of proceedings error for which preservation is not required. We need not, however, decide which category applies because on these records, defendant's *Boykin* claims are clearly reviewable on direct appeal. We therefore turn to the merits.

## IV

Defendant asserts that the records of the plea proceedings in both cases did not establish that he pleaded guilty voluntarily, knowingly and intelligently because there were no affirmative indicia of the waiver of his constitutional rights. The People respond that, taken as a whole and read in context, the plea colloquies were sufficient.

It is well settled that a guilty plea will be upheld if "it was entered voluntarily, knowingly and intelligently" (*People v Haffiz*, 19 NY3d 883, 884 [2012] [internal quotation marks and citation omitted]). When a defendant opts to plead guilty, he must waive certain constitutional rights—the privilege against self-incrimination and the rights to a jury trial and to be confronted by witnesses (*see Boykin*, 395 US at 243). But we have repeatedly rejected a formalistic approach to guilty pleas and have "steered clear of a uniform mandatory catechism of pleading defendants in favor of broad discretions controlled by flexible standards" (*People v Alexander*, 19 NY3d 203, 219 [2012] [internal quotation marks and citation omitted]). A guilty plea therefore will not be invalidated "solely because the Trial Judge failed to specifically enumerate all the rights to which the defendant was entitled and to elicit from him or her a list of detailed waivers before accepting the guilty plea" (*People v Harris*, 61 NY2d 9, 16 [1983]). Indeed, a valid waiver could be established where the record shows that the defendant consulted with his attorney about the constitutional consequences of a guilty plea (*see North Carolina v Alford*, 400 US 25, 29 n 3 [1970]; *Hanson v Phillips*, 442 F3d 789, 801 [2d Cir 2006]).

At the same time, our cases have held that to constitute a knowing, voluntary and intelligent plea, there must be "an affirmative showing on the record" that the defendant waived his constitutional rights (*People v Fiumefreddo*, 82 NY2d 536, 543 [1993]; *see also Boykin*, 395 US at 242 [requiring an "affirmative showing" that the guilty plea was "intelligent and voluntary"]; *Harris*, 61 NY2d at 17 ["To be sure, the record must show an intentional relinquishment or abandonment of a known right or privilege" (internal quotation marks and citations omitted)]). Consequently, a record that is "silent will not overcome the presumption against waiver by a defendant of constitutionally guaranteed protections" (*Harris*, 61 NY2d at 17). Succinctly put: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and

evidence which show, that an accused intelligently and understandingly rejected his constitutional rights. Anything less is not waiver" (*id.* [internal quotation marks, ellipses, brackets and citation omitted]; *see also Boykin*, 395 US at 242 [same]).

Applying these principles to the cases before us, we conclude that the records do not affirmatively demonstrate defendant's understanding or waiver of his constitutional rights. In each case, there is a complete absence of discussion of any of the pertinent constitutional rights; none are addressed by the court, defense counsel or defendant. Nor is there any indication that defendant spoke with his attorney regarding the constitutional consequences of taking a plea—in fact, these cases were both resolved during arraignment within days of arrest. Put simply, the records in these cases are inadequate to uphold the judgments of conviction and, contrary to the dissent's position, the pleas must be vacated (*see United States v Dominguez Benitez*, 542 US 74, 84 n 10 [2004] ["(W)hen the record of a criminal conviction obtained by guilty plea contains no evidence that a defendant knew of the rights he was putatively waiving, the conviction must be reversed"]; *Boykin*, 395 US at 244 [reversing the conviction "because the record does not disclose that the defendant voluntarily and understandingly entered his pleas of guilty" (internal quotation marks and citation omitted)]). Moreover, the People do not dispute that the accusatory instruments in both cases should be dismissed because defendant has already served his sentences (*see People v Hightower*, 18 NY3d 249, 253 [2011]; *People v Dreyden*, 15 NY3d 100, 104 [2010]; *compare People v Allen*, 39 NY2d 916, 917-918 [1976]).

Finally, contrary to the dissent's assertion, we signal no retreat from the principle that trial courts retain broad discretion in the taking of pleas and need not follow any kind of rigid catechism. We merely apply the well-settled proposition that the record as a whole must contain an affirmative demonstration of the defendant's waiver of his fundamental constitutional rights—a requirement the dissent neglects to mention. And although the dissent suggests that a defendant must establish prejudice even where the record is completely silent as to his waiver of constitutional rights, *Boykin* holds directly to the contrary.

. . .

Accordingly, in each case, the order of the Appellate Term should be reversed, defendant's guilty plea vacated and the misdemeanor complaint dismissed.

SMITH, J. (dissenting). In *People v Nixon* (21 NY2d 338, 355 [1967]), we renounced what we referred to as "the catechism system" for taking guilty pleas. We held that "[i]t should never be enough to undo a plea because of some omission in inquiry at the time of plea without a showing of prejudice" (*id.*). We reaffirmed the *Nixon* holding in *People v Harris* (61 NY2d 9, 16-19 [1983]), saying that we did not read *Boykin v Alabama* (395 US 238 [1969]) to require a "ritualistic recitation of the rights waived upon a guilty plea." Later, in *People v Lopez* (71 NY2d 662, 665 [1988]), we held that "in order to preserve a challenge to the factual sufficiency of a plea allocution there must have been a motion to withdraw the plea"; we made an exception only for the "rare case" where the record of the allocution "clearly casts significant doubt upon the defendant's guilt or otherwise calls into question the voluntariness of the plea" and where the trial court has not eliminated that doubt by further inquiry (*id.* at 666).

Under *Nixon*, *Harris* and *Lopez*, the mere omission of a recital from the allocution does not lead automatically to the nullification of a guilty plea. There must be a showing, either on the record of the plea proceeding itself or in a motion to withdraw the plea, that it was not in fact knowingly, voluntarily and intelligently entered.

To date, our principal departure from the *Nixon/Harris/Lopez* approach has been in *People v Catu* (4 NY3d 242, 245 [2005]), in which we held that "the failure of a court to advise of postrelease supervision requires reversal of the conviction," regardless of whether defendant was prejudiced by the omission. I joined the *Catu* decision, and I do not suggest that we can or should overrule it. But it set us on a long and troubled journey that I would not, if I had the choice to make over, embark on again (*see e.g. People v Hill*, 9 NY3d 189 [2007]; *People v Sparber*, 10 NY3d 457 [2008]; *Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358 [2008]; *People v Williams*, 14 NY3d 198 [2010]; *People v Lingle*, 16 NY3d 621 [2011]; *People v Pignataro*, 22 NY3d 381 [decided Dec. 12, 2013]).

I now fear that we may be making a similar mistake. The majority seems to hold that at least some of the so-called "*Boykin* rights*" must be recited in a plea allocution, and that if they are not the defendant is entitled to plea withdrawal, regardless of whether he was prejudiced by the omission or whether he has made a motion to withdraw his plea. I do not know how many

pleas will be put in jeopardy by this holding. Not many, I hope, because the recital of *Boykin* rights is customary, but, as these cases show, the custom is not always observed, especially where the case is a relatively minor one. Today's holding, especially if it is rigidly applied, has the potential to do real harm to the efficient administration of justice by invalidating freely-entered guilty pleas that result in entirely fair plea agreements.

And it is hard for me to imagine that today's holding will do any real good. I agree that the practice of reciting the *Boykin* rights on the record is well-advised, but its chief advantage lies in preventing false claims of the "if I had only known" variety by defendants who later change their minds about their pleas. Has any defendant ever really been misled into pleading guilty by a failure to recite the *Boykin* litany? I have never heard of a plea allocution in which a defendant, told, for example, that he is waiving his right to trial by jury, responded by saying: "Oh, I didn't know that, and now that I know it I'm not pleading guilty."

I find it most unlikely that this defendant was hoodwinked into pleading guilty by ignorance of his *Boykin* rights. He had a lawyer at each of the plea proceedings. I have quoted before (*People v Mox*, 20 NY3d 936, 940-941 [2012, Smith, J., dissenting]), and now quote again, the wise words of Judge Breitel in *Nixon* (21 NY2d at 354):

> "[I]f independent and good advice in the interest of the defendant is the goal, it is more important that he consult with competent counsel than that a harried, calendar-conscious Judge be the one to perform the function in displacement of the lawyer."

There is nothing in the record of these two cases to suggest that defendant's counsel were not competent, or that defendant had no opportunity to consult with them before accepting a sentence of time served in one case, and 10 days in the other. The judgments entered on defendant's pleas should be affirmed.

Chief Judge LIPPMAN and Judges READ and RIVERA concur with Judge GRAFFEO; Judge SMITH dissents and votes to affirm in an opinion in which Judge PIGOTT concurs; Judge ABDUS-SALAAM taking no part.

In each case: Order reversed, defendant's guilty plea vacated and complaint dismissed.