Chief Judge Lippman
(concurring in People v Conceicao and dissenting in People v Perez and People v Sanchez). In People v Tyrell (22 NY3d 359 [2013]) we addressed a problematic practice, which although perhaps not as pervasive as the People claim in their Conceicao retroactivity argument, had become troublingly recurrent, particularly in criminal courts handling non-felony matters: guilty pleas were being elicited in a most perfunctory way, often leaving no affirmative record of the foundational waiver of constitutionally guaranteed trial rights — commonly referred to as the Boykin rights — essential to the validity of any plea-based conviction (see Boykin v Alabama, 395 US 238, 243 [1969]). Tyrell reaffirmed that the necessary waiver could not and would not be presumed from a “silent record” (22 NY3d at 365-366). The present appeals collectively ask whether a record that is not utterly silent as to the plausibility of a waiver, but contains no actual expression of a defendant’s waiver of trial rights, is sufficiently “audible” to support a criminal conviction. The majority says that it may be, and, indeed, that in two of the three appeals before us the records are. I believe that this is incorrect as a matter of law, perpetuates what has been in practice a standardless jurisprudence productive of inexplicably disparate outcomes in materially indistinguishable cases, and is demonstrably flawed as a matter of policy. It was precisely this approach to judging the adequacy of foundational trial-right waivers that allowed the emergence and spread of the plea practice we finally found it necessary to disapprove in Tyrell.
Boykin, of course, identified “three important federal rights” encompassed by the waiver necessarily incident to a conviction founded upon a plea — the privilege against compulsory self- *386 incrimination, the right to a jury trial, and the right of confrontation (395 US at 243). The waiver of these rights, said Boykin, could not be presumed from a “silent record” (id.). Boy-kin, however, did not stop there; it did not hold that a waiver could otherwise be presumed. Rather, quoting from Carnley v Cochran (369 US 506 [1962]), a case concerning the adequacy of a waiver of the right to counsel, Boykin made clear that the record of a plea was minimally required to document an actual, not a supposed, waiver; it was required to show “that an accused was offered [the fundamental trial rights just before identified in the opinion] but intelligently and understandingly rejected the offer” (Boykin, 395 US at 242 [internal quotation marks omitted]). “Anything less,” said the Court, “is not waiver” (id.). Nor did the Court leave a question as to where the responsibility for creating the record of the waiver lay: the obligation was judicial and when met by “the judge” left “a record adequate for any review that may be later sought” (id. at 244).
This State’s jurisprudence governing plea adequacy is rooted in cases preceding Boykin — cases whose principal focus was not, as was Boykin’s, the foundational waiver, but rather the sufficiency of the defendant’s factual admission of guilt. In People v Nixon (21 NY2d 338 [1967]), our leading pre-Boykin decision bearing on plea adequacy, the Court pointedly declined to require any uniform canvas in eliciting pleas, holding instead that pleas were to be judged individually, giving consideration to various factors, including the knowledge, experience and native intelligence of the defendant, “the seriousness of the crime, the competency and experience of counsel, the actual intensive participation by counsel, the nature of the crime as clearly understood by laymen, the rationality of the ‘plea bargain,’ and the speed or slowness of procedure in the particular criminal court” (21 NY2d at 353). Our post -Boykin decisions, most notably People v Harris (61 NY2d 9 [1983]), have carried forward Nixon’s rejection of plea “catechisms” and concomitantly have read Boykin not to require a “ritualistic” recitation of the trial rights waived incident to a guilty plea (id. at 19).
Reasonable minds might well differ as to this minimizing gloss of Boykin-, Boykin does, after all, speak of “three important federal rights” that must be waived as a condition of a valid plea and, in turn, requires as a condition of a valid waiver a record showing that the accused was offered and “intelligently and understandingly” rejected those rights. If, as *387 Boykin emphasizes, “[a]nything less is not waiver,” it is exceedingly difficult to understand how a record that simply does not document an offer and a rejection of the core trial rights — and none of the records before us on these appeals does — can support a valid plea-based conviction. It may be that a defendant is intelligent and experienced, that he or she is represented by competent counsel, and that the proposed plea seems rational. But those are circumstances most often merely supposed at the time of a plea, and would not, even if more firmly grounded, singly or in combination overcome the strong presumption against the waiver of fundamental rights (see Johnson v Zerbst, 304 US 458, 464 [1938]) to establish that a plea rests, as it must to be a conviction, upon a knowing and intelligent relinquishment of trial rights. Boykin would seem to say quite clearly that only an actual record waiver, or direct evidence of one, is equal to that formidable task.
While it may seem a sign of judicial sophistication to eschew “litanies,” “catechisms,” “rituals,” “scripts” and “formulas” and to aspire instead to an exercise of discretion based on the “totality,” it is a stubborn, analytically unassailable truth that without a sound waiver of trial rights there can be no valid conviction premised on a plea. Establishing such a waiver may not necessitate a particular choice of words, but it is unavoidable that a certain canvas must in the end be conducted. Federal law requires such a canvas (Fed Rules Crim Pro rule 11 [b] [1]), and it is time to wean ourselves of the frankly provincial notion rooted in our pre-Boykin jurisprudence that one should not be employed in our state courts as well, at least for the purpose of establishing a knowing and intelligent waiver of the basic trial rights.
Clinging to the notion that record trial-right waivers, or their evidentiary equivalent, are unnecessary where it appears to a reviewing court that there are circumstances seeming to suggest that such a waiver would have been made is, as this recent crop of appeals demonstrates, a recipe for the toleration of slipshod practice and deficient pleas, particularly in busy courts handling non-felony cases where the temptation to shortcuts is understandably heightened. It is all too easy to suppose that a represented defendant will, as a matter of course, accept a plea offer to a relatively minor offense carrying a commensurately minor penalty, and, on the basis of that supposition, to fall into the habit of accepting pleas on a record that is silent as to the most direct consequence of the plea — the loss of the defend *388 ant’s trial rights. The implicit assumption, that those rights are valueless except as barter for the offered plea and thus not worthy of mention, is incompatible with the presumption of innocence and trivializes a pleading decision that may have most serious personal and economic consequences. It is an assumption ill-befitting our courts, heedless of basic principles governing the waiver of constitutional rights and, to the extent that it needlessly gives rise to marginal pleas inviting further litigation, profligately wasteful of judicial resources. It is time to end rather than encourage such pleas. Tyrell, I believe, attempted to accomplish the former purpose, albeit without signaling a discontinuity in our jurisprudence. The salutary consequence of that careful effort will be minimized by the majority’s willingness to infer waivers never actually elicited by, or otherwise sufficiently proved before the plea court. This does not seem to me to be sound law or sound policy.