The People of the State of New York, Respondent, 
against
Hamadou Barry, a/k/a, Manadou Barry, a/k/a Hamido Barry, Defendant-Appellant.



In consolidated criminal prosecutions, defendant appeals from three judgments of the Criminal Court of the City of New York, New York County (Kevin B. McGrath, J. at plea; Ann E. Scherzer, J. at sentencing), each rendered January 29, 2013, convicting him, upon his pleas of guilty, of two counts of criminal trespass in the third degree and one count of unlawful possession, transportation and sale of untaxed cigarettes, and imposing sentence.




Per Curiam.
Judgments of conviction (Kevin B. McGrath, J. at plea; Ann E. Scherzer, J. at sentencing), rendered January 29, 2013, affirmed. 
As part of a global resolution of five separate criminal prosecutions, defendant entered into a plea agreement on November 19, 2012, pursuant to which he pleaded guilty to one count of possession of untaxed cigarettes in satisfaction of docket number 2012NY051526, one count of third-degree criminal trespass in satisfaction of docket number 2012NY058999, and one count of third-degree criminal trespass in satisfaction of docket number 2012NY064913; the charges under the remaining two docket numbers were dismissed. The plea agreement also provided that if defendant was not arrested within the next six months and served ten days' community service, he could replead to disorderly conduct under the three dockets and receive a sentence of time served. If defendant did not complete his community service or was rearrested, he would be sentenced to 90 days in jail.
At the next court appearance two months later, the court was informed that defendant violated the provisions of the plea agreement by getting rearrested (for a felony)[FN1]
, a fact confirmed by defense counsel, who raised no challenge to the validity of the guilty pleas. The Court asked defense counsel if defendant was "ready to move forward to sentence" noting that [*2]the "promise is 90 days concurrent." Defense counsel responded that it was his "understanding that should be happening today." When the court asked defendant if there was anything he wanted to say, defendant replied "No, nothing." The Court then sentenced defendant to 90 days jail.

Defendant's present contention that his guilty pleas were not knowing, voluntary and intelligent is unpreserved, since he failed to make an appropriate postallocution motion or otherwise raise these challenges, despite ample opportunity to do so at the postplea appearance at which his new arrest and its effect on sentencing were raised (see People v Green, 140 AD3d 616 [2016], lv denied 28 NY3d 971 [2016]; see also People v Crowder, 24 NY3d 1134 [2015]; People v Jeudy, 153 AD3d 1203 [2017]). We decline to review this unpreserved claim in the interest of justice.

As an alternative holding, we find that the pleas were knowing, intelligent and voluntary (see People v Sougou, 26 NY3d 1052 [2015]). In satisfaction of five accusatory instruments charging, inter alia, two class A misdemeanors each punishable by up to one year in jail, defendant was permitted to plead guilty to reduced charges in exchange for a very favorable sentence of 10 days community service, with the opportunity to replead to disorderly conduct, a violation, and receive a sentence of time served. The pleas occurred several months after defendant was arrested and charged on each case. Moreover, defendant was represented by active and able counsel, and was assisted by a French interpreter. The negotiated sentence was much less than what defendant would have faced had he gone to trial and been convicted of the top counts. These facts establish the rationality of the plea, as well as the effectiveness and participation of counsel who negotiated the plea.

Contrary to the dissent's characterization of the colloquy as "confusing" and the manner in which the court conducted the proceeding as "vague and unclear," the record indicates that the court methodically reviewed the three dockets that were part of the plea agreement. Defense counsel confirmed that defendant had "authorized ... a plea of guilty on his behalf" to possession of untaxed cigarettes in satisfaction of docket number 2012NY051526 (in response to questioning from the court, defendant personally admitted his guilt by confirming that "on June 26, 2012, at 1181 Broadway, [he] exchanged money for cigarettes [that] didn't have the appropriate valid seals from the Department of Consumer Affairs licensing [and] possessed cigarettes without the proper New York State tax stamps on them"); third-degree criminal trespass in satisfaction of docket number 2012NY058999 (defendant personally confirming that "on July 28, 2012, [he] entered the New York subway system without permission and authority to do so and that the subway had gates to preclude [him] from entering"); and third-degree criminal trespass in satisfaction of docket number 2012NY064913 (defendant personally confirming that on "148th Street and Lenox Avenue, [he] entered the New York City subway system beyond the turnstiles without permission and authority to do so without paying the lawful fare"). Moreover, defendant indicated his understanding that "on all these dockets," by entering guilty pleas, he was giving up his "right to remain silent, call witnesses on [his] behalf, [and to] cross-examine any witness called against [him]"

Defendant, then approximately 19 years old, was, moreover, no novice to the criminal justice system at the time of the plea (see generally People v Montford, 134 AD2d 207, 209 [1987], lv denied 70 NY2d 1009 [1988]). In this regard, we take judicial notice of the fact that [*3]on October 11, 2011, defendant pleaded guilty to robbery in the third degree (see Penal Law § 160.05), a felony, in Supreme Court, New York County, and was sentenced as a youthful offender (see People v Alnutt, 107 AD3d 1139, 1141 n 6 [2013], lv denied 22 NY3d 1136 [2014]; People v Wright, 53 AD3d 963, 964 [2008], lv denied 11 NY3d 710 [2008]; People v Burnside, 13 Misc 3d 649 [Sup Ct, NY Co. 2006], affd 58 AD3d 551 [2009], lv denied 12 NY3d 923 [2009]). In addition, the Court record below indicates that in accordance with CPL article 160, a "Fingerprint Response Summary" listing defendant's October 2011 felony conviction was furnished to the Criminal Court before defendant's plea on November 19, 2012.

Thus, the record amply establishes that defendant, represented by counsel and no novice to the criminal justice system, clearly understood the nature of the charges to which he was pleading guilty and willingly entered the pleas to obtain the benefit of the bargain to which he had struck (see People v Goldstein, 12 NY3d 295, 301 [2009]).

I concurI concurI concur

Hon. Doris Ling-Cohan, Dissenting Opinion.

The right to due process is a bedrock constitutional principle (People v Peque, 22 NY3d 168, 175 [2013]). To ensure that a criminal defendant receives this fundamental right to due process before pleading guilty, a trial court must develop a record that contains an affirmative demonstration of the defendant's knowing, intelligent, and voluntary waiver of his constitutional rights (id. at 184). The almost silent record in this case, in which defendant spoke a total of three words through an interpreter, lacks the requisite and essential affirmative demonstration of defendant's waiver of his core constitutional rights. As explained further below, defendant here did not knowingly, intelligently, and voluntarily waive his constitutional rights, because, inter alia: (1) defendant was silent when the question was posed as to whether he waived his rights, (2) defendant was not apprised of any "right to a trial," (3) the pleas, which were confusing even in English (let alone translated into another language), were discussed by the lower court in a vague and unclear manner, and (4) the lower court improperly used compound questions and abbreviations of complex legal terms in the allocution (e.g. "fifty dollar DNA" and "CD," instead of conditional discharge or explaining what the term actually meant). Accordingly, absent such a showing, defendant's guilty pleas cannot be upheld, and I respectfully dissent.

I. Background

Defendant appeals from one judgment of unlawful possession and sale of untaxed cigarettes (Tax Law § 1814 [b]) and two judgments of third-degree trespass (PL 140.10 [a]), arising out of multiple incidents, all upon pleas of guilty.[FN2]
 Defendant, a teenager from West Africa who does not speak English, challenges the voluntariness of his pleas, in which, during the entire plea colloquy, he said only one word, "yes," three times, through a French interpreter. Defendant correctly asserts that the within record lacks an affirmative demonstration of his voluntary waiver of his constitutional rights.

The record reflects that, during the "allocution," the court cut off the defense counsel four times, as he was attempting to articulate the pleas (tr at 2, line 22; 3, line 3; 3, line 19; 4, line 7; and 6, line 21), and the trial judge engaged in a long back and forth colloquy with defense [*4]counsel. At one point, in the midst of the allocution, even the judge was confused as to whether defendant had to stay out of trouble for a year or six months, resulting in a further confusing colloquy with defense counsel.

Significantly, defense counsel failed to indicate that he was waiving formal allocution and that he had discussed the consequences of the plea with defendant, which is not disputed by the majority and is fatal to the plea. Further, while the lower court provided an interpreter for defendant,[FN3]
 a 19 year-old from Guinea, the court did not directly address defendant until the end of the plea hearing, after engaging in a lengthy and confusing colloquy with defense counsel, as to the terms of the plea. Adding to the confusion was that when the court finally addressed defendant directly, he engaged in a lengthy "explanation" of the plea deal, but got the terms wrong (tr at 5, lines 1-23, Nov. 19, 2012). In his "explanation," the judge used the abbreviations such as "CD" (tr at 6, line 4) and "DNA" (tr at 6, line 9). The judge then asks: "Sir, is that what you want to do?" (id. at 7, lines 2-3). Defendant is silent. Hearing no answer, instead of clarifying, he then asked defendant a lengthy inappropriate compound question, as follows:

THE COURT: On all of these dockets, you have a right to remain silent, call witnesses on your behalf, cross examine any witnesses called against you. Are you waiving those rights on docket ending in 526 and are you pleading guilty that on June 5, 2012, at 1181 Broadway, that you exchanged money for cigarettes and those cigarettes didn't have the appropriate valid seals from the Department of Consumer Affairs licensing, at that date and time, and that you possessed cigarettes without the proper New York State tax stamps on them (tr at 7, lines 4-14, Nov. 19, 2012 [emphasis added]).

Notably, there is no response from defendant to such dual question either, which is not disputed by the majority. Hearing no response, instead of clarifying, the judge merely asked, "Are you pleading guilty to that?" (id. at line 15), with defendant responding "Yes" only to the latter question (id. at line 16). As explained further below, by answering "Yes" to "Are you pleading guilty to that?", defendant was clearly only answering that one question, rather than answering the previous compound question, in which he was also asked whether he was "waiving" certain "rights" in relationship to the sole "docket ending in 526." The majority has chosen to ignore defendant's silence when asked about a waiver of rights (which was asked in the context of one count only).

The court continued to recite the facts in the two remaining charges, without mentioning or eliciting any waiver of constitutional rights. With respect to the docket ending in 999, defendant stated "yes" when asked if he was pleading guilty to entering the New York Subway system at East 110th Street, New York County, without permission and authority, and that the subway system had gates to preclude him from entering on July 28, 2012. Likewise, with respect to the docket ending in 913, defendant stated "yes" when asked if he was "pleading" guilty of entering the New York Subway system beyond the turnstiles at 148th Street and Lenox Avenue, [*5]New York County, without permission and authority to do so and without paying the lawful fare.

Notwithstanding this, significantly, defendant was never even asked whether he was waiving his constitutional rights, as to such other two charges; nor was he advised that he had a right to a trial. As explained further below, contrary to the majority's characterization, nothing about such allocution was "methodica[l]," given the interruptions, confusion as to the terms, compound questions, abbreviations used of complex legal terms, defendant's silence on several occasions in response to crucial questions, the failure to advise defendant as to his right to a trial and a failure to elicit a clear affirmative waiver of rights. Thus, defendant never knowingly, intelligently, or voluntarily waived any of his constitutional rights. 

II. Interest of Justice Demands Review of This Teenage, Non-English Speaking Defendant's Plea Allocution

Although the People are correct that defendant did not preserve this contention for appellate review by moving to withdraw his plea or filing a motion to vacate the judgment, this court may, nevertheless, exercise its power to review, "as a matter of discretion in the interest of justice" (CPL 470.15 [3] [c]; 470.15 [6]; People v Wilson, 55 Misc 3d 83 [App Term, 1st Dept 2017]). Here, in view of the extreme deficiency of the plea allocution, in which a teenage, non-English speaking defendant uttered only one word — "yes" — three times, throughout the entire plea proceeding and, significantly, never explicitly waived his Boykin rights, on any of the three charges, it is incumbent upon this court to review the understanding and voluntariness of defendant's plea (see People v Pearson, 55 AD3d 314 [1st Dept 2008]; People v Colon, 42 AD3d 411, 411 [1st Dept 2007]; People v Vickers, 84 AD3d 627, 629 [1st Dept 2011]).

III. A Valid Plea Requires an Affirmative Demonstration of a Defendant's Waiver of His Fundamental Constitutional Rights

Merely taking a plea in open court does not " serve as an effective procedural bulwark against uninformed and thus involuntary surrender of basic constitutional protections" (People v Peque, 22 NY3d 168, 209 [2013, Lippman, Ch. J., dissenting]). Rather, both the United States Supreme Court and New York courts routinely emphasize that to effectuate a valid plea, the record must contain an affirmative demonstration of a defendant's waiver of his constitutional rights (see Brady v United States, 397 US 742, 747 n 4 [1970] ["the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily"]; Boykin v Alabama, 395 US 238, 242 [1969] ["prosecution [must] spread on the record the prerequisites of a valid waiver"]; Carnley v Cochran, 369 US 506, 516 [1962]; People v Tyrell, 22 NY3d 359 [2013]; People v Louree, 8 NY3d 541, 544-545 [2007]; People v Sougou, 26 NY3d 1052 [2015]; People v Conceicao, 26 NY3d 375 [2015]).

It is axiomatic that, "[t]o ensure that a criminal defendant receives due process before pleading guilty and surrendering his or her most fundamental liberties to the State, a trial court bears the responsibility to confirm that the defendant's plea is knowing, intelligent, and voluntary" (People v Peque, 22 NY3d 168, 184 [2013]). While " trial courts retain broad discretion in the taking of pleas and need not follow any kind of rigid catechism...the record as a whole must contain an affirmative demonstration of the defendant's waiver of his fundamental constitutional rights" (People v Tyrell, 22 NY3d 359 [2013] [emphasis added]). Although "a valid waiver could be established where the record shows that the defendant consulted with his attorney about the constitutional consequences of a guilty plea the record must show, or there [*6]must an allegation and evidence which show, that an accused intelligently and understandingly rejected his constitutional rights. Anything less is not waiver" (Tyrell, 22 NY3d 359 at 365-366 [emphasis added]). The record here lacks any affirmative waiver, and defendant was never even asked the question as to whether he waived his constitutional rights on all the counts.

IV. Due Process Places an Independent Responsibility on Courts to Ensure that Defendants Understand the Consequences of Their Pleas

The safeguards of due process in plea allocutions are so integral to New York's assurance of due process that judges have a "vital responsibility" to ensure that a defendant understands the consequences of his guilty plea (People v Conceicao, 26 NY3d 375, 383 [2015], citing People v Harris, 61 NY2d 9, 19 [1983]; People v Peque, 22 NY3d 168, 190-191 [2013] [distinguishing the right to effective counsel from the court's independent responsibility to provide assurance in the record of a defendant's understanding of the consequences of his plea]). For example, in People v Serrano, 15 NY2d 304 (1965), the Court of Appeals explained that where the defendant cast inconsistencies during his plea allocution, the trial judge should have made further inquiry to clarify the record before accepting a guilty plea. "What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable of canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequence" (Boykin v Alabama, 395 US 238, 243-244 [1969]). "Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality" (Boykin v Alabama, 395 US 238, 243 [1969]).

Moreover, fifty years ago, the Court of Appeals highlighted that "particular pains must be taken" when a defendant is "ignorant of the language of the court" (People v Nixon, 21 NY2d 338, 355 [1967]; see also Padilla v Kentucky, 559 US 356, 370-371 [2010][FN4]
). Here, teenage defendant, a native of Guinea, was "ignorant of the language of the court" in a literal sense in that English was not his native tongue, as evidenced by his need for a French-language interpreter at the proceeding (id.). Furthermore, there was no affirmative showing that defendant, a teenager from another culture, knew the court's legal "language," in that he was so familiar with the nomenclature of the court, especially when "legalese" was used in one allocution. Given these factors, a slower and more detailed explanation of the plea, its terms and conditions and the rights he was waiving were needed to ensure that the plea and the waiver of defendant's constitutional rights were truly knowing, intelligent, and voluntary.

Even when proceedings are conducted with the best interpreters, with more sophisticated defendants, there are many potential impediments to understanding, which are inherent in the use of interpreters. For example, if there is to be an accurate translation, it is incumbent on the speaker to speak slowly, using one or two sentences at a time, so the interpreter has a full opportunity to translate. If there is a rapid exchange between two speakers, with multiple interruptions and incomplete sentences uttered, as there was here between the judge and defense counsel, it was likely confusing in the translation to defendant as to who was actually speaking and the content of each speaker's statements. Significantly, given the obstacles throughout the [*7]entire allocution, the court should have asked clarifying questions, to ensure that teenage defendant, who did not speak English and was from another culture, understood what was being said. Significantly, the young defendant was never asked if he understood or if he had questions.

In addition, some legal terms require explanation, even for sophisticated defendants, not to mention a teenager from another country. The transcript reflects that numerous legal terms were utilized by the court, including the use of complex legal words and phrases shortened to mere initials, such as "CD" for "conditional discharge," without any explanation. One can only imagine what the initials "CD," which stand for "conditional discharge," were translated into by the translator, if at all.[FN5]
 This use of mere initials would be problematic for native English speakers not educated in formal legal jargon and criminal court practice, and even for attorneys specializing in civil law.

Additionally, the term "cross examine" would likely be incomprehensible, without further explanation, to a teenager from Guinea, particularly since the judge never mentioned any right to trial,[FN6]
 at which such right to cross-examine would arise. While the judge merely articulated the relevant constitutional rights as the "right to remain silent, call witnesses on your behalf, cross examine any witnesses called against you" (tr at 7, lines 7-4), notably, the record lacks an explanation that these rights come into play if defendant goes to trial. Significantly, defendant was not told that he even had a right to a trial, so he could not have "waived" such right. The right to trial, guaranteed by the Sixth Amendment, is an overarching right, from which all other Boykin rights flow (US Constitution 6th Amendment, see also NY Constitution article I, § 2). "A valid plea encompasses a waiver of the right to trial by jury, the privilege against compulsory self-incrimination, and the right to confront one's accusers" (People v Sougou, 26 NY3d 1052, 1054 [2015]). Without a knowledge of a right to trial, the corresponding trial-related right against compulsory self-incrimination and right to confront one's accusers are rendered meaningless.

While a trial judge need not specifically enumerate all of a defendant's Boykin rights before accepting a guilty plea (People v Harris, 61 NY2d 9, 16 [1983]), a record, such as here, lacking affirmative indicia that the defendant was informed of and understood his vital right to trial cannot possibly demonstrate a knowing, intelligent, and voluntary waiver of any of the defendant's Boykin rights (cf., People v Mendez, 148 AD3d 555 [1st Dept 2017] [upholding the defendant's plea, notwithstanding that the court omitted the word "jury" when specifically referencing defendant's right to a trial]; see also People v Walker, 135 AD3d 1244, 1245 [3d Dept 2006] [referring to the defendant's Boykin rights as his "trial-related rights" when evaluating the voluntariness of the plea at issue]).

Further, even with the assistance of an interpreter, the term "waiving," without more,[FN7]
 was unlikely to have been understood. Similarly, the term "right to be silent," without more of an explanation, might be easily understood as that defendant should not say anything on that date in court, because there was no mention of his specific right to trial or that the People had the burden to prove its case beyond a reasonable doubt. When the use of an interpreter is taken into consideration, as is necessary in reviewing the totality of the circumstances, the court's confusing colloquy and defendant's virtual silence provide no assurance that defendant actually understood his constitutional rights, and that he was in fact affirmatively waiving those rights, including his right to trial, which was never mentioned.

V. Reviewing the Factors Required to be Considered in Determining the Validity of a Guilty Plea — Age, Background, and Experience — Defendant's Plea Cannot Be Upheld as Voluntary

"[T]he voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it" (People v Harris, 61 NY2d 9, 19 [1983], citing Brady v United States, 397 U.S. 742, 749 [1970]; People v Sougou, 26 NY3d 1052 [2015]). Relevant circumstances that must be considered in determining whether a defendant understands the nature of his or her proffered guilty plea are the "age, experience and background of the accused" (People v Vickers, 84 AD3d 627, 628 [1st Dept 2011], citing People v Seaberg, 74 NY2d 1, 11 [1989]). Evaluating these factors prevents unconstitutional plea agreements based on a defendant's incomprehension or ignorance of the proceedings or the fundamental rights that he waives by taking such a plea (Boykin v Alabama, 395 US 238, 243 [1969]). Additionally, as noted above, the court must take particular pains to develop the record where a defendant is a young, foreign, non-native English speaking defendant (as here) who is considered to be a member of the "class least able to represent themselves" (Padilla v Kentucky, 559 US 356, 370-371 [2010]; see also People v Nixon, 21 NY2d 338, 355 [1967]). Thus, considering all of the relevant circumstances surrounding defendant's plea, as required, the plea illustrates an incomprehension of the proceedings and constitutes a "perfect cover-up of unconstitutionality" (Boykin v Alabama, 395 US 238, 243 [1969]).

Significantly, defendant was only 19 years-old at the time of his plea. While the law recognizes that a 19 year-old can be prosecuted as an adult, nevertheless, defendant's young age is a factor that must be considered when reviewing the voluntariness of his plea, due to defendant's potential lack of understanding and continuing mental development. The United States Supreme Court has recognized that, "[j]uveniles mistrust adults and have limited understandings of the criminal justice system and the roles of the institutional actors within it" (Graham v Florida, 560 US 48, 78 [2010]). Although defendant was one year older than the requisite age of adult criminal prosecution in New York,[FN8]
 it defies logic that one would gain a [*8]deep trust and understanding of the criminal justice system in the one (1) year between the ages of 18 and 19 years-old. As also noted by the United States Supreme Court, the "qualities that distinguish juveniles from adults do not disappear when an individual turns 18'" (Roper v Simmons, 543 US 551, 574 [2005]).[FN9]


Moreover, looking to defendant's experience and background, defendant is a French-speaking teenager from West Africa. Although an interpreter was provided, the court asked no clarifying questions to gauge the foreign, teenage defendant's understanding of his plea: whether he understood the promises that had been made; whether he understood the consequences he would suffer if he failed to comply with the conditions of the plea; whether he had enough time to consult with his attorney; or whether he had any questions about the terms of the plea (see generally Padilla v Kentucky, 559 US 356, 370-371 [2010]; People v Nixon, 21 NY2d 338, 355 [1967]["In cases involving defendants without lawyers, or those ignorant of the language of the court, particular pains must be taken").[FN10]


While it is acknowledged that the court need not engage in any particular litany (People v Tyrell, 22 NY3d at 365), nevertheless, it is clear that the record must show an affirmative demonstration of a defendant's waiver in looking at the totality of the circumstances, which is particularly lacking here (People v Conceicao, 26 NY3d 375, 384 [2015]; People v Sougou, 26 NY3d 1052 [2015]). Further, notwithstanding that defendant did not ask for an explanation from the court as to his plea, the duty remains with the court, not the accused, to develop a record that clearly establishes an affirmative demonstration of defendant's waiver (People v Peque, 22 NY3d 168, 190-191 [2013]). Notwithstanding the majority's claim that "defendant, then approximately 19 years old, was no novice to the criminal justice system," the majority has not provided one citation in which these basic constitutional rights were lessened for those individuals judged by a court to be "not a novice." As Learned Hand wrote, "[o]ur dangers do not lie in too little tenderness to the accused. Our procedure has always been haunted by the ghost of the innocent man convicted" (U.S. v Garrison, 291 F 646, 649 [SDNY 1923]). Given defendant's age, background, and experience, the court cannot delegate its crucial role to a foreign, non-English speaking, teenage defendant and then penalize him for failing to question an unfamiliar legal system, during a proceeding conducted in an unfamiliar language. 

VI. Record Does Not Affirmatively Demonstrate Defendant's Voluntary Waiver of His Constitutional Rights, Because the Allocution Was Confusing and Unclear

The record lacks an affirmative demonstration of defendant's waiver of his constitutional rights. As indicated, the record herein is essentially silent, consisting of a mere three words from the non-English speaking teenage defendant, a native from Guinea. Further, as indicated, the record indisputably includes two questions posed by the judge, to which there was silence in response. The plea colloquy at issue, while translated through a French interpreter, included a lengthy compound question which improperly asked both (1) if defendant waived some of his Bokyin rights as to one count only and (2) if defendant wished to plead guilty to the first docket, including a lengthy factual recitation of those charges (tr at 7, lines 4-16, Nov. 19, 2012). The teenage defendant was not permitted to answer, as the judge then immediately asked another question ("Are you pleading guilty to that?" [id. at line 15]). Defendant answered "Yes" to the latter question only (id. at line 16).

The record exhibits a patent lack of clarity as to whether defendant understood the rights involved in any alleged waiver. The use of a compound question, to which he was not even permitted to answer, was particularly confusing. The court asked defendant if he knowingly waived his constitutional rights to the first charge and whether he was pleading guilty to the first charge, as part of a compound question. A compound question inherently raises more than one question, but allows for only one answer (Craig Lee Montz, Trial Objections from Beginning to End: The Handbook for Civil and Criminal Trials, 29 Pepp L Rev 243, 289 [2002]). When a court combines numerous inquiries into one question, as was done by the lower court here, it raises the substantial danger that a defendant did not understand and did not intend to respond "yes" to all of the questions posed (see e.g. Weise v. Rainville, 173 CA2d 496, 506-507, 343 P2d 643 [1959]).[FN11]
 Notably, the First Department has held that the use of a compound question in a criminal allocution is reversible error (People v Lawrence, 192 AD2d 332 [1st Dept 1993] [holding that the circumstances of the case required that the court take pains to guarantee that the plea was fully understood and intelligently entered and, "absent such a dialogue, the court fails in its duty to ensure that the plea is made voluntarily, with knowledge and intelligence"]).

The characteristic ambiguousness of a compound question in a plea allocution directly conflicts with the requirement that a record contain an affirmative demonstration of a defendant's waiver of his fundamental constitutional rights (People v Tyrell, 22 NY3d 359 [2013]). To properly waive a defendant's due process rights, the record must affirmatively demonstrate the defendant's waiver, and the responsibility of developing a record with such an affirmative demonstration lies with the court (People v Peque, 22 NY3d 168, 190-191 [2013]). Indeed, here, the court posed a confusing compound question to defendant, which queried in part whether he was waiving certain constitutional rights (as to one charge only), and failed to allow defendant to answer at all. Therefore, the record is silent as to any waiver of fundamental constitutional rights and simply does not demonstrate that defendant "indicated his understanding" of his waiver of his constitutional rights. Thus, a guilty plea cannot be upheld on this record, where there is no affirmative showing that the defendant (a teenage, non-English speaking person) waived his constitutional rights.

While the majority opines that defendant's plea is valid, because defendant was represented by counsel and did not claim that his counsel adequately failed to explain the parameters of the plea and that defendant is not a "novice" to the criminal justice system, nevertheless, a valid waiver may only be established where the record shows that a defendant actually consulted with his attorney, which is lacking here (People v Tyrell, 22 NY3d 359 at 365-366 [vacating defendant's plea and finding that there was "indication that defendant spoke with his attorney regarding the constitutional consequences of taking a plea"]). In other words, the standard to evaluate the validity of a guilty plea is not simply whether a defendant was represented by counsel; the record must reflect that a defendant actually consulted with his attorney and understood the consequences of the plea. The record in this case fails to exhibit that defendant "intelligently and understandingly rejected his constitutional rights," as required, by establishing that defendant either consulted with his attorney or by an explicit waiver of his rights as to each charge pled on the record (id.). Even the majority is unable point to an exchange in the transcript which indicated that defendant either consulted with his attorney or explicitly waived his rights, preferring to read into a mere plea an implicit waiver. Specifically, according to the majority, by merely "entering guilty pleas," defendant indicated his understanding that, " he was giving up his right to remain silent, call witnesses on [his] behalf [and to] cross-examine any witness called against [him]." Thus, following this logic, anytime these is a mere plea, there would be, according to the majority, an implicit waiver of basic constitutional rights, regardless of the allocution, and there need not be an "affirmative showing on the record" that defendant waived his constitutional rights, in order to constitute a knowing, voluntary, and intelligent plea (People v Tyrell, 22 NY3d 359, 365 [2013]). It is telling when, instead of citing language from the "allocution," the majority focuses on language from a subsequent court appearance (in which defendant was represented by new counsel) in an attempt to rehabilitate the defective pleas.

Furthermore, the record here is devoid of any confirmation that defendant met and conferred with his counsel or that the same competent counsel represented him throughout the proceedings (cf. People v Perez, 26 NY3d 375, 384 [2015]). Notably, upon review of the record, three different attorneys appeared at the plea proceeding, at sentencing, and at appellate arguments. In fact, the only colorable demonstration in the record of defendant's consultation with his counsel is his attorney's initial statement that defendant authorized him to enter a guilty plea for violating PL 140.10 and Tax Law § 1814. Yet, a bald authorization to enter a guilty plea does not suffice as indication that a defendant adequately discussed with his attorney the constitutional consequences of taking a plea (People v Tyrell, 22 NY3d 359 [2013] [holding that, despite counsel representing his authorization to enter defendant's guilty plea, the record did not affirmatively demonstrate defendant's understanding or waiver of his constitutional rights]).
People v Sougou, 26 NY3d 1052, 1055 (2015), which is cited by the majority and affirms a defendant's guilty plea based on competent attorney representation, is distinguishable. In Sougou (26 NY3d at 1055), the judge directly addressed the defendant on the record and "asked specifically whether defendant had discussed the plea and the sentence, as described in open court, with his lawyer; whether defendant was pleading voluntarily and of his own free will; and whether defendant understood that he was giving up his right to a trial and to hearings on the search and seizure evidence. Defendant answered yes' to each and every question." Significantly, unlike in Sougou, 26 NY3d 1052, defendant here was unable to provide an answer to each and [*9]every question, due, in part, to the inappropriate compound question posed by the court.[FN12]
 In light of these significant differences, Sougou supports reversal here, where the record does not reflect that defendant consulted with his attorney, nor that he answered a question affirmatively waiving his rights.

Moreover, defendant's case was not scheduled for trial the same day, and there is no indication that defendant even understood that he had a right to trial, at which the People had to prove their case against him beyond a reasonable doubt (compare People v Sanchez, 26 NY3d 375, 380 [2015]). As indicated, the lower court made no reference to defendant's right to trial, at all.

Lastly, the rationality of the plea bargain cannot salvage the lack of an affirmative demonstration of defendant's waiver of his fundamental constitutional rights considering the significant due process implications in this case and the low-level charges (see People v Sougou, 26 NY3d 1052 [2015]). Notably, defendant's crimes did not involve personal injury or threat to public safety. It is undisputed that the total monetary losses to the government in this case consist of two convictions for theft of services (at $2.50 per conviction, for a combined loss of $5.00), plus tax on the sale of loose cigarettes to three people and possession of one sealed pack of cigarettes without the required tax stamp. Nevertheless, the court's task is not to evaluate the rationality of the plea in a vacuum (see People v Sougou, 26 NY3d 1052, 1055 [2015] [internal citations omitted] ["A court determining the voluntariness of a plea must review the record as a whole and the circumstances of the plea in its totality"]). Rather, the court must review the totality of the circumstances to ensure that defendant's constitutional rights are affirmatively waived. On this record, and based upon the totality of the circumstances, defendant did not affirmatively waive his constitutional rights (see Sougou, 26 NY3d at 1055; People v Conceicao, 26 NY3d 375 [2015]).

VII. Conclusion

Accordingly, vacating defendant's guilty plea in this case is a conclusion supported by New York law and in agreement with our prior holdings and would recognize, consistent with the Court of Appeal's holdings in Tyrell, Sougou, and Conceicao, that defendant's plea was not voluntary, knowing, or intelligent. On this record, the totality of the circumstances cannot be held to establish an affirmative demonstration that defendant understood and waived his fundamental constitutional rights, where the foreign-born, teenage, non-English speaking defendant never explicitly waived any constitutional rights, was silent when several questions were posed, was never informed of his right to trial, only uttered "yes" three times through an interpreter, after inappropriate questions and confusing complex "explanations," and given that no clarifying questions were ever asked to gauge his understanding. Thus, for the above reasons, I respectfully dissent, and would reverse and dismiss, as defendant has fully served the imposed jail sentences and in light of the minor nature of the offenses, which at most, total a loss of under $10.00.

THIS CONSTITUTES THE DECISION AND ORDER OF THE COURT.

Decision Date: December 22, 2017



Footnotes

Footnote 1: The court notes that defendant's conviction for that felony was recently affirmed by the Appellate Division, First Department (People v Barry, 149 AD3d 494 [2017], lv denied 29 NY3d 1123 [2017]).

Footnote 2: As part of the pleas, two of the defendant's five open misdemeanor dockets were dismissed.~~

Footnote 3: It is noted that the record does not reflect that the Court swore-in the interpreter, as recommended by the New York State Unified Court System (UCS) (New York State Unified Court System, UCS Benchcard and Best Practices for Judges: Working with Court Interpreters, http://www.nycourts.gov/COURTINTERPRETER/pdfs/Judicial_ Benchcard.PDF [accessed July 20, 2017]). It is likely that the interpreter was a per diem translator rather than a court employee. 

Footnote 4: Padilla focused on the requirement to allocute regarding immigration issues. Although defendant herein is foreign born, his attorney did not raise immigration issues, and, thus, the court will not address it. 

Footnote 5: There is no indication that the interpreter, who translated into French, was a regularly employed court interpreter used to translating at criminal court on a regular basis, rather than a per diem interpreter, or that the interpreter was even sworn in.~~

Footnote 6: Federal courts require that before accepting a plea of guilty, the trial court must enumerate, and ensure that defendant understands, defendant's waiver of his rights, including, specifically "the right to a jury trial" (Fed Rules Crim Pro rule 11 [b] [1] [c]).

Footnote 7: Simply indicating that defendant will be "giving up" such right would have been clearer.

Footnote 8: Recognizing that youth do not have the same cognitive or emotional capabilities as adults, New York recently raised the age of criminal responsibility from 16 and 17 years-old to 18 years-old (2017 NY Senate-Assembly Bill S2009C/A3009C, Part WWW at 209- 253).~~

Footnote 9: In fact, research has shown that the part of the brain that controls impulse control and rational decisions based on legal and moral consequences continue to develop well beyond age 18 (MacArthur Foundation Research Network on Adolescent Development and Juvenile Justice, Less Guilty by Reason of Adolescence, Issue Brief 3, available at http://www.adjj.org/ downloads/6093issue_brief_3.pdf).~~

Footnote 10: The New York Bench Book for Trial Judges provides a sample guilty plea colloquy that recommends allocating defendant with a page and a half of such clarifying questions (Association of Justices of the Supreme Court of the State of New York, Bench Book for Trial Judges, Sample Colloquy — Guilty Plea, Criminal Law §10:2 [note: online treatise]). 

Footnote 11: New York courts deem compound questions so unclear that judges will sustain objections to the use of a compound question to interrogate a witness during trial (Helen E. Freedman, J., New York Objections, Confusing, Prejudicial: Compound § 6:20 [12th rev, 2010]). 

Footnote 12: Nor was he even apprised that he had a right to trial, unlike Sougou.~~